Nos. 61,335
61,336
61,337

STATE OF KANSAS, *Appellee,* v. JIMMY D. WILLS, *Appellant.*

(765 P.2d 1114)

Opinion filed December 9, 1988.

*Lucille Marino,* assistant appellate defender, argued the cause, and *Benjamin C. Wood,* chief appellate defender, was with her on the brief for appellant.

*Mona Furst,* assistant district attorney, argued the cause, and *Clark V. Owens,* district attorney, and *Robert T. Stephan,* attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The defendant, Jimmy D. Wills, appeals from a judgment denying his motion to withdraw his plea of guilty to three counts of theft and two counts of burglary. The plea was entered pursuant to a plea bargain agreement. The Court of Appeals affirmed the judgment of the district court in an unpublished opinion dated May 27, 1988. On July 8, 1988, we granted the defendant's petition for review.

The defendant was charged in Sedgwick County District Court with two counts of burglary and three counts of theft. The five counts arose from three separate complaints: 86-CR-1743 (charging one count of theft and one count of burglary); 86-CR-1763 (charging theft); and 86-CR-1814 (charging burglary and

theft). Under a plea agreement with the State, the defendant agreed to plead guilty to each count in exchange for the State's promise not to invoke the provisions of the Habitual Criminal Act, and to recommend that the sentences upon each count run concurrently, yielding a three- to ten-year controlling sentence on all counts.

The district court accepted the defendant's guilty plea on February 9, 1987, and on March 6, 1987, imposed a sentence of one to five years' imprisonment on each theft count, and three to ten years on each burglary count. The district court, however, chose not to follow the State's recommendation, and the sentences imposed in Case No. 86-CR-1814 were designated to run consecutively with the sentences imposed in the other three counts. The defendant thus received a controlling term of imprisonment of six to twenty years.

On March 9, 1987, the defendant filed a motion to modify the sentence imposed. At a hearing on the defendant's motion, counsel for the defendant requested that the court grant probation or reduce the controlling term of imprisonment to three to ten years. When the court asked the State for its views on the defendant's motion, the State's attorney referred to a State Reception and Diagnostic Center report, which it characterized as "not what you would call a good report." The State then concluded: "It does not appear that a modification is in order." The defendant's motion to modify the sentence was denied.

The defendant then moved to withdraw his guilty plea, arguing that the State had violated his due process rights by failing to comply with the terms of the plea arrangement. The defendant's motion was overruled on June 18, 1987. The defendant then appealed the denial of his motion to the Court of Appeals, which affirmed the judgment of the district court.

The sole issue on appeal is whether the district court erred in refusing to permit the defendant to withdraw his guilty plea after the State failed to support the previously recommended sentence during a post-sentence hearing. More specifically, is the State bound by the plea agreement at the hearing on defendant's motion to modify the sentence?

While the opinion of the Court of Appeals cites to several Kansas cases applying general rules of law regarding plea bargains, none of the cited cases deals with the obligation of the

State to comply with the terms of the plea arrangement in post-sentence proceedings. Nor does the Court of Appeals opinion cite any persuasive authority for its conclusion that the State is absolved from any further obligations under the plea arrangement once it makes its initial recommendations at the original sentencing hearing.

The Court of Appeals, in finding that the district court did not err in denying the defendant's motion to withdraw his guilty plea, stated:

"Wills contends on appeal that the State violated the terms of the plea negotiation by not recommending a controlling term of three to ten years at the sentence modification hearing and that manifest injustice resulted. He relies on *Santobello v. New York,* 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971), for the proposition that the State may not renege on a promise made in the course of plea negotiations. In *Santobello,* the State agreed during plea negotiations to make no recommendation concerning the sentence, but at a sentencing hearing the State recommended the maximum sentence. The judge stated that he was not influenced by the State's recommendation, but nevertheless imposed the maximum sentence. The Supreme Court vacated the judgment and remanded, holding that where a plea rests on a promise by the State, the promise must be fulfilled.

"The pivotal question in the present case is whether the State violated the terms of the plea agreement by not recommending that all the sentences run concurrently. Our Supreme Court has held that a motion for modification is not considered part of the 'imposition of sentence.' *State v. Jennings,* 240 Kan. 377, 378, 729 P.2d 454 (1986). The Supreme Court has further observed that, at the time plea negotiations were entered into, the prosecutor may not have had full knowledge of defendant's past record or the dispositions on prior charges. *Burden v. State,* 225 Kan. 549, 555, 592 P.2d 451 (1979).

"Where the prosecution carries out its promise to recommend a certain sentence, *Santobello* does not apply. *Burden v. State,* 225 Kan. at 553. In the present case the State made the agreed recommendations at the sentencing hearing. After the State Reception and Diagnostic Center report became available and Wills filed his motion to modify, the State was no longer bound to recommend a shorter sentence. The trial court did not abuse its discretion in refusing to find manifest injustice to the defendant."

While the Court of Appeals correctly noted that, in *State v. Jennings,* 240 Kan. 377, 729 P.2d 454 (1986), we held that a motion for modification is not part of the "imposition of sentence," the issue, however, was the right of the defendant to appear in person. We said:

"Unless a motion for modification is considered part of the 'imposition of sentence,' the appellant had no right to appear in support of his motion. We resolved this issue in *State v. Bryant,* 227 Kan. 385, 607 P.2d 66 (1980), where we

held that a defendant's right to be present does not extend to post-conviction motions. In so holding, we reasoned that the trial ends when a verdict has been rendered, any right which the accused may have to be present at proceedings following indictment continues only during the pendency of the trial, and a defendant, once convicted, cannot expect to be present at post-conviction motions. See also *State v. Myers*, 10 Kan. App. 2d 266, 271, 697 P.2d 879 (1985), where the Court of Appeals noted that a defendant has no right to be present at a ruling on a motion to modify. We agree and hold that a defendant has no right to a hearing on a motion to modify sentence or to be present at consideration of that motion." 240 Kan. at 378-79.

The obligation of the State pursuant to a plea agreement was not at issue in *Jennings*. Nor did the State in the present case limit its promise to the "imposition of sentence."

In *Santobello v. New York*, 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971), the United States Supreme Court stated:

"The plea must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be made known. . . .

"This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 261-62.

The basis for the Court's decision is somewhat unclear because the Court did not specifically cite a constitutional provision as the basis for its decision. However, one obviously existed in order for the Court to reverse the decision of the New York State court. The Court seems to apply a combination of contract and constitutional law in arriving at its decision. However, in *Mabry v. Johnson*, 467 U.S. 504, 81 L. Ed. 2d 437, 104 S. Ct. 2543 (1984), the Court made it clear that the decision in *Santobello* was based upon constitutional due process considerations. In *Mabry*, the Court said:

"A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution. . . .

. . . .

"Thus, only when it develops that the defendant was not fairly apprised of its consequences can his plea be challenged under the Due Process Clause. *Santobello v. New York*, 404 U.S. 257 (1971), illustrates the point. We began by acknowledging that the conditions for a valid plea 'presuppose fairness in securing agreement between an accused and a prosecutor. . . . The plea must, of course, be voluntary and knowing and if it was induced by promises, the

essence of those promises must in some way be made known.' Id., at 261-262. It follows that when the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand." 467 U.S. at 507-09.

Neither *Santobello* nor *Mabry* speaks to whether the State is bound by its promise in post-sentence modification hearings. We did note the *Santobello* decision in *Burden v. State*, 225 Kan. 549, 553, 592 P.2d 451 (1979), stating, "[A]s a matter of constitutional law if the prosecution agrees to make concessions in exchange for a guilty plea, then it must carry out those concessions or the plea will be invalid." The issue of whether the prosecution may deviate from the terms of the plea agreement during post-sentence proceedings was not before this court in *Burden*, nor has it been considered by this court.

This issue was addressed in *United States v. Ewing*, 480 F.2d 1141 (5th Cir. 1973), where the defendant agreed to plead guilty under a plea bargain in which the prosecution agreed not to oppose a sentence of probation. The trial court, however, denied the defendant's request for probation, and imposed a sentence of seven years' imprisonment. The defendant subsequently filed a motion for a reduction of sentence, pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure. At a hearing on this motion, the prosecution "argued strongly in opposition" to the defendant's request for probation. 480 F.2d at 1142. The defendant's motion for a reduction of sentence was denied, and he appealed to the Fifth Circuit Court of Appeals.

The circuit court concluded that the prosecution had violated the terms of the plea arrangement by opposing the defendant's request for probation in the hearing on his motion for a reduction of sentence:

"Our case is almost identical to *Santobello* except for the fact that the prosecution fulfilled its commitment at the initial sentencing hearing only to breach it at the subsequent hearing on Ewing's Rule 35 motion for the reduction of sentence. But this distinction is of little import because both of these proceedings were integral parts of the sentencing process in this case. Surely when Ewing obtained the Government's promise not to oppose probation in exchange for his plea of guilty, he did so in the expectation that the benefits of that promise would be available throughout the proceedings relevant to the determination of his sentence. The Government was obligated to fulfill its commitment at least until the question of Ewing's sentence was finally resolved by the sentencing judge." *United States v. Ewing*, 480 F.2d at 1143.

In 1978, the Fifth Circuit held that the prosecution could

respond to false statements in a defendant's motion to modify a sentence without violating its obligations under the original plea agreement. In *United States v. Johnson*, 582 F.2d 335 (5th Cir. 1978), the defendant's motion for modification incorrectly stated that the prison to which he had been assigned did not contain psychiatric facilities. In responding to the motion for modification, the Government noted simply that the institution did possess facilities for the treatment of psychiatric problems. The court held that, in sentence modification proceedings, the Government could counter misinformation by the defendant in his motion, but may not violate "the essence of the plea bargain." 582 F.2d at 337.

Whether a "no recommendation" agreement, in which the prosecution agrees to make no recommendation at the original sentencing hearing, bars the prosecution from opposing a subsequent sentence modification motion is a disputed issue among the federal circuits. Several circuits have held that a "no recommendation" agreement does not bar the Government from opposing a motion for modification of sentence. See *United States v. White*, 724 F.2d 714 (8th Cir. 1984); *Brooks v. United States*, 708 F.2d 1280 (7th Cir. 1983); *United States v. Arnett*, 628 F.2d 1162 (9th Cir. 1979). The Eleventh Circuit, however, has indicated that such an agreement does prevent the Government from opposing a motion by the defendant to modify his sentence. See *United States v. Campbell*, 711 F.2d 159 (11th Cir. 1983).

All of the above cases, with the exception of *Brooks*, distinguish rather than reject *Ewing*. *Brooks* unequivocally rejects *Ewing*, stating: "A plea bargain is, in law, just another contract." 708 F.2d at 1281. The court went on to find that all the Government promised was not to make a sentence recommendation. It did not make a further promise to stand mute at the post-sentence hearing. The court concluded that the plea bargain agreement was silent on whether the Government was bound in a post-sentence hearing. Therefore, unless the agreement specifically states otherwise, the promise of the Government is not binding after the original sentencing. The court in *Brooks* found that, since the agreement was silent as to post-sentence hearings, the defendant bore the loss. In other words, the plea agreement is construed in favor of the Government and against the accused. The problem with such an approach is twofold. First, the de-

fendant's due process rights recognized by the decisions in *Santobello* and *Mabry* are ignored. We recognize that, before a plea of guilty is entered, the parties are free to contract subject to basically the same legal principles as apply in a commercial contract setting. Once the defendant enters a plea of guilty, due process mandates the State perform as it promised. As pointed out by Daniel Frome Kaplan in his comment on the subject:

"In the commercial setting, courts often allocate the burden of expression by allowing losses to lie where they fall. This has been attributed to an attitude of non-intervention, a related attitude that shifting the loss interferes with personal autonomy, and an application of a species of 'social Darwinism' to the commercial world. These attitudes, however, cannot be unthinkingly applied to the criminal justice system, which is interventionist by design and which gives the accused numerous procedural protections reflecting the fact that the parties in a criminal proceeding do not stand on an equal footing.

. . . .

"It is a reasonable presumption that, at the bargaining stage, defendants expect to reap the benefits of their plea agreements during the entire sentencing process, whether the process is bifurcated or not. The defendant has only one bargaining chip—his ability to impose procedural costs on the prosecution by insisting upon going to trial—and once he has used it by pleading guilty, he has nothing left with which to bargain. In this situation, the defendant is bargaining for a particular end result—a guilty plea that will result in a lighter sentence than the one he would expect to receive after a trial. In light of the 'consideration' given by a defendant for the government's promise, it is reasonable to expect continuing prosecutorial adherence to the agreement: a prosecutor's commitment to a specified sentence recommendation would be of little value if the government's tongue is to be freed at a later, related proceeding." Comment, *Where Promises End: Prosecutorial Adherence to Sentence Recommendation Commitments in Plea Bargains*, 52 U. Chi. L. Rev. 751, 767-71 (1985).

Second, a plea agreement which is silent as to post-sentence hearings is ambiguous. The ambiguity of such a plea agreement is also discussed by Kaplan:

"The parties to such a contract must either have negotiated this point, but failed to set it out in their written agreement with sufficient clarity, or not have negotiated the point at all. If the first is the case, the contract is ambiguous because the language in the writing is susceptible of either of the two interpretations urged by the parties; in such situations, the court must decide which interpretation, if either, was in fact agreed upon. If the parties did not negotiate the point, an implied term must be found to cover the unbargained-for contingency.

"The plea agreement in *Brooks*, 'to recommend neither for nor against an executed sentence in this cause,' is ambiguous. It is susceptible of different interpretations and, not surprisingly, the parties urged different meanings on the court ex post. If no extrinsic evidence is available to show that the parties gave

the ambiguous term a common meaning at the bargaining stage, the court cannot give meaning to a term about which the parties' expectations diverged. Instead, in order to prevent the bargain from failing entirely, the court must supply a term to cover the unbargained-for contingency.

. . . .

". . . When the parties' shared expectations are not ascertainable, either on the face of the agreement or by recourse to extrinsic evidence, a prosecutor's promise either to remain silent at sentencing or to make a favorable recommendation should be construed as binding the prosecution at a Rule 35(b) proceeding for sentence reduction. The application of such a default rule is consistent with modern contract law and realistically enforces defendants' expectations, so that plea bargains may properly be considered to have been knowingly and intelligently entered into by these defendants." 52 U. Chi. L. Rev. at 765-72.

In the present case, the State's agreement to recommend a controlling term of imprisonment of three to ten years is silent as to the State's obligations under the arrangement during post-sentence proceedings. The agreement contains neither an express provision that the State's obligations to make such recommendations includes post-sentence proceedings nor an express provision that the State's obligations are limited solely to the original sentencing hearing. The State obviously controls the promise it makes to the defendant. The State for all practical purposes controls the plea agreement process from negotiations to drafting the final agreement that is signed by the defendant. If the State wants to limit its promises, it can do so by clearly setting out these limitations in the plea agreement. There can then be no question as to what the parties agree to and that the defendant's waiver of his constitutional right to jury trial is voluntary and knowing. Absent such a limitation, the defendant would reasonably expect the State to be bound by its promise at all hearings which affect the determination of his sentence.

A plea agreement reasonably susceptible to different interpretations is ambiguous. The plea agreement in the instant case is reasonably susceptible to different interpretation and is therefore ambiguous. Where a statute is ambiguous, we require that it be strictly construed in favor of the accused. *State v. Magness*, 240 Kan. 719, 721, 732 P.2d 747 (1987). We find no compelling reason to adopt a different rule in interpreting ambiguous plea agreements.

We conclude that in the present case the State's promise to make favorable sentence recommendations binds the State at the subsequent hearing on the defendant's motion to modify sen-

tence, absent language in the plea agreement limiting the State's promise to the original sentencing hearing. However, it does not follow that the defendant is entitled to withdraw his plea of guilty. Since the State honored the plea agreement at the time the defendant pled guilty and was sentenced, the district court was correct in denying the defendant's motion to withdraw his plea of guilty. The defendant is entitled to have his motion to modify his sentence reheard by a different district judge and, at such hearing, the State will be bound by the plea agreement.

The judgment of the Court of Appeals is affirmed in part and reversed in part. The judgment of the district court is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

Six, J., not participating.