880 P.2d 314

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Jerome P. MARES, Defendant–Appellant.**

**No. 14906.**

Court of Appeals of New Mexico.

June 16, 1994.

Certiorari Granted July 21, 1994.

Tom Udall, Atty. Gen., Joel Jacobsen, Asst. Atty. Gen., Santa Fe, attorneys for plaintiff-appellee.

Todd Hotchkiss, Timothy M. Padilla & Associates, P.C., Albuquerque, attorneys for defendant-appellant.

## OPINION

APODACA, Judge.

On the Court's own motion, the original opinion filed May 13, 1994, is withdrawn and the following opinion is substituted in its place.

Defendant appeals the orders of the trial court denying his motions to enforce his plea and disposition agreement and to reconsider his sentence of nine years following revocation of his probation. Defendant contends on appeal that his sentence violates his plea agreement because (1) the plea agreement limited his time of actual incarceration to twenty-four months and (2) the State did not recommend that Defendant be sentenced similarly to others in the same circumstances. We hold that the plea agreement continued to limit the trial court's sentencing discretion at post-sentencing proceedings, thus limiting Defendant's incarceration to twenty-four months. We therefore remand for resentencing in accordance with the plea agreement. Because of our disposition of Defendant's first issue, it is unnecessary to address Defendant's second issue or Defendant's motion for bail pending appeal.

## BACKGROUND

Defendant was charged with two counts of trafficking in cocaine, in violation of NMSA

1978, § 30–31–20(A)(2) (Cum.Supp.1993). A first offense of trafficking cocaine is a second degree felony, subject to a determinate sentence of nine years. Section 30–31–20(B)(1); NMSA 1978, § 31–18–15(A)(2) (Repl.Pamp. 1990). On December 2, 1992, Defendant entered into a plea and disposition agreement providing that Defendant would plead nolo contendere to one count of trafficking cocaine and the State would move to dismiss the second count. The plea agreement also provided:

1. That the following disposition will be made of the charges:

A. The Defendant shall receive a sentence of 9 years of incarceration.

. . . .

C. Defendant's sentence as referred to in Paragraph A shall be suspended such that there shall be no more than 24 months of potential actual incarceration ordered, with no fines. Sentencing shall be no earlier than February 1, 1993.

D. The State's recommendation as to sentencing shall be limited to the recommendation that the Defendant should be treated as others under similar circumstances. The Defendant shall be allowed to call such witnesses or present such evidence at sentencing as he shall so desire.

E. The aforesaid suspension shall be on the condition that the Defendant be on probation for a period of 48 months under the Standard Order of Probation of this Judicial District, with probation costs pursuant to statute.

. . . .

4. Unless this plea is rejected or withdrawn, that the Defendant hereby gives up any and all motions, defenses, objections or request[s] which he has made or raised, or could assert hereafter, to the Court's entry of judgment against him and imposition of a sentence upon him consistent with this agreement.

. . . .

I have read and understand the above. I have discussed the case and my constitutional rights with my lawyer. I understand that by pleading **nolo contendere,** I will be giving up my right to a trial by jury, to confront, cross-examine, and compel the attendance of witnesses, and my privilege against self-incrimination. I agree to enter my plea as indicated above on the terms and conditions set forth herein. I fully understand that if, as part of this agreement, I am granted probation, a suspended sentence or a deferred sentence by the Court, the terms and conditions thereof are subject to modification in the event that I violate any of the terms or conditions imposed.

Defendant's nolo contendere plea was accepted. The sentencing hearing was held February 15, 1993. The State's recommendation at the sentencing hearing was that Defendant be treated as others in similar circumstances. The trial court imposed a sentence of nine years incarceration, which was suspended except for seventy days with work release allowed, forty-eight months probation (subject to usual probation conditions), 240 hours of community service, drug counselling, and a donation to the Tucumcari schools.

The presentment hearing on the final form of judgment was held on March 11, 1993. Defendant was apparently not present, and his counsel appeared by phone. At the telephonic hearing, Defendant's trial counsel questioned the trial court concerning Defendant's exposure to incarceration if there was a probation violation, stating Defendant's understanding that the maximum incarceration Defendant could be exposed to was twenty-four months. The trial court, however, stated that it understood that the sentencing cap was limited only to the initial sentence and that a probation violation "could result in nine years incarceration."

At the end of the hearing, Defendant's counsel withheld approval of the proposed judgment and sentence. After he later telephoned his approval, the judgment and sentence was entered on March 12, 1993. The judgment included the provision that Defendant was sentenced to incarceration for a term of nine years, which sentence was suspended except for seventy days to be served in the Quay County jail and forty-eight months of probation "under the terms and conditions of the Standard Order of Proba-

tion of this Judicial District." The order of probation entered in Defendant's case stated that he was placed under probation supervision on February 15, 1993. The order prohibited the use of controlled substances and stated that, "if [Defendant] violate[d] any of the above conditions of [his] Probation, the Court may revoke [Defendant's] probation or modify the conditions of [his] probation."

On March 17, 1993, the State moved to revoke Defendant's probation on the grounds that he had consumed cocaine while on work release. The motion requested that Defendant's probation be revoked and that he be required to serve "the entire nine (9) years to which he was heretofore sentenced." At a hearing on March 29, 1993, the trial court informed Defendant that, if he was found to have violated the terms of his probation or work release, the court could order Defendant to serve the entire nine-year sentence followed by two years of parole. Neither Defendant nor his counsel questioned the court's authority to order that Defendant be incarcerated for nine years.

On April 5, 1993, the State filed an amended motion, alleging that, in addition to using cocaine, Defendant had illegally used and possessed "Parafon Forte (chlorzoxazone), a prescription drug." At the probation revocation hearing held on April 19, 1993, Defendant agreed not to contest the State's allegation concerning cocaine in exchange for the State abandoning the allegation that he also illegally possessed the prescription drug. The trial court informed Defendant that this "plea" was equivalent to an admission of guilt, and Defendant indicated that he understood. The State recommended that Defendant be ordered to serve the full nine years of incarceration. Following argument, Defendant stated that he had no comment. Defendant was subsequently ordered to "serve all incarceration heretofore suspended" and "is hereby committed to the custody of the Corrections Division ... for a term of nine (9) years...."

Defendant then obtained new counsel, who moved to enforce the plea agreement and to reconsider the sentence. At the motions hearing, Defendant testified that he understood the plea agreement provided for seven-

ty days incarceration plus probation. He then stated his belief that the plea agreement provided for maximum incarceration of twenty-four months. He testified that he had asked counsel about the twenty-four-month cap, but that counsel never answered his questions. He also testified that his former counsel had assured him that twenty-four months was the "maximum exposure" he faced.

On cross-examination, Defendant stated that he understood the plea agreement provided for nine years incarceration and that at least seven years was to be suspended on condition that he be placed on probation. He insisted, however, that his former counsel never informed him he might have to serve nine years if he violated probation. He also testified that, although he knew of the hearing held to clarify that issue before entry of judgment, his former counsel did not tell him about the outcome of that hearing. The trial court denied the motions, thus resulting in this appeal.

## DISCUSSION

 The State initially contends that the issue on appeal is whether the trial court abused its discretion by refusing to suspend seven years of Defendant's nine-year sentence. We agree that, if the plea agreement had allowed the trial court to sentence Defendant to nine years incarceration with no period suspended, the trial court would not have abused its discretion in sentencing Defendant to what was a legal term. *See State v. Cawley*, 110 N.M. 705, 712, 799 P.2d 574, 581 (1990) (no abuse of discretion where sentence imposed was within range afforded by sentencing statutes); *State v. Augustus*, 97 N.M. 100, 101, 637 P.2d 50, 51 (Ct.App.) (stating "there being no claim that the sentence was not in accordance with law, the trial court did not abuse its discretion in imposing a lawful sentence upon [the] defendant"), *cert. denied*, 97 N.M. 621, 642 P.2d 607 (1981). However, the existence of the plea agreement limited the trial court's discretion. It is well-established that, absent statutory or constitutional infirmity, both the State and a defendant are bound by the bargain established in a plea and disposition agreement. *See State v. Santillanes*, 98

N.M. 448, 451, 649 P.2d 516, 519 (Ct.App. 1982). Once a plea has been accepted, the dictates of due process require the trial court to honor the agreement. *State v. Sisneros,* 98 N.M. 279, 281, 648 P.2d 318, 320 (Ct.App. 1981), *rev'd on other grounds,* 98 N.M. 201, 647 P.2d 403 (1982); *see also* SCRA 1986, 5–304(C) (Repl.1992) (stating that, if the plea agreement is accepted, "the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement"). The trial court is not only "barred from imposing a sentence [that is] outside the parameters of the plea agreement," it also has "the authority and the duty to see that the promises made by [the State] are carried out." *Sisneros,* 98 N.M. at 281, 648 P.2d at 320 (citations omitted). We view the specific issue before us, therefore, as whether the sentence imposed by the trial court following the revocation of Defendant's probation was outside the parameters of the plea agreement.

No New Mexico case has explicitly discussed the standard by which a plea agreement should be interpreted. The State urges us to interpret the agreement " 'according to what [Defendant] "reasonably understood" when he entered his plea.' " *Lucero v. Kerby,* 7 F.3d 1520, 1522 (10th Cir.1993) (quoting *United States v. Hand,* 913 F.2d 854, 856 (10th Cir.1990)). The State further argues that the trial court's determinations (that the sentence of nine years of incarceration comported with the provisions of the plea agreement and with Defendant's understanding of it) are factual findings that should be determined under a substantial evidence standard by which this Court defers to the trial court's determinations. *See State v. Moore,* 111 N.M. 619, 620, 808 P.2d 69, 70 (Ct.App.) (discussing trial court's findings regarding whether State exercised peremptory challenges in a discriminatory manner), *cert. denied,* 111 N.M. 706, 809 P.2d 56 (1991).

Although we agree that the plea agreement should be interpreted in accordance with what the Defendant reasonably understood when he entered his plea, the issue of whether the trial court breached the plea agreement after accepting it is a question of law that is reviewed de novo by an appellate court. *See Lucero,* 7 F.3d at 1522. Although the State suggests that we look at circumstances beyond the written agreement to determine the understanding of the parties to the plea agreement, *see id.* (defendant's failure to complain about his sentencing originally or when his probation was revoked supported conclusion he reasonably believed plea agreement's limitation on sentencing applied only to initial sentence), we believe that our inquiry is limited to the "parameters of the plea agreement." *See Sisneros,* 98 N.M. at 281, 648 P.2d at 320; *cf. State v. Lord,* 91 N.M. 353, 355, 573 P.2d 1208, 1210 (Ct.App.1977) (defendant's nondisclosure of alleged promise waives defendant's claim that State did not keep promise), *cert. denied,* 91 N.M. 491, 576 P.2d 297 (1978). Additionally, any ambiguity in the plea agreement must be construed against the State. *State v. Wills,* 244 Kan. 62, 765 P.2d 1114, 1120 (1988); *cf. Sisneros,* 98 N.M. at 281, 648 P.2d at 320 (State not allowed to take advantage of errors it made in drafting judgment and sentence). If the State wishes to make a plea agreement subject to reservations or conditions, "such a reservation or condition should be clearly specified in the agreement." *Citti v. State,* 107 Nev. 89, 807 P.2d 724, 726 (1991). Our conclusion that the plea agreement should be determined de novo based primarily on the reasonable interpretation of the written provisions is bolstered by the public policy of requiring full disclosure of the plea agreement's terms. This Court has previously stated that:

> Full disclosure makes direct appellate review meaningful. It also reduces the number and difficulty of subsequent collateral attacks. A full record of the agreement, and of the defendant's understanding of it, limits the matters subject to challenge. Even as to facts which are outside the record and therefore are not conclusively established, the record may be so persuasive as to discourage post-conviction proceedings, or at least to simplify their ultimate disposition. Finally, a prisoner whose plea of guilty is accepted only after a full disclosure and judicial scrutiny of the agreement upon which it rests, is more likely to accept the justness of his

conviction, thus removing a substantial obstacle to rehabilitation.

*State v. Lucero,* 97 N.M. 346, 350, 639 P.2d 1200, 1204 (Ct.App.1981), *cert. quashed,* 98 N.M. 51, 644 P.2d 1040 (1982). Plea agreements are required to be reduced to writing. SCRA 5–304(B); *see also Lucero,* 97 N.M. at 348, 639 P.2d at 1202 (secret plea agreements are impermissible under our Rules of Criminal Procedure). If we were to accept the State's argument that extrinsic evidence should be determinative of the meaning of the written plea agreement, doing so would undermine the public policy noted above, by encouraging parties not to spell out their full agreement in the written document.

■ We conclude that Defendant's interpretation of the written terms of the plea agreement in this case is reasonable. As stated in *Wills:*

> The agreement contains neither an express provision that the State's obligations to make such recommendations includes post-sentence proceedings nor an express provision that the State's obligations are limited solely to the original sentencing hearing. The State obviously controls the promise it makes to the defendant. The State for all practical purposes controls the plea agreement process from negotiations to drafting the final agreement that is signed by the defendant. If the State wants to limit its promises, it can do so by clearly setting out these limitations in the plea agreement. There can then be no question as to what the parties agree to and that the defendant's waiver of his constitutional right to jury trial is voluntary and knowing. Absent such a limitation, the defendant would reasonably expect the State to be bound by its promise at all hearings which affect the determination of his sentence.

765 P.2d at 1119–20.

■ The State contends that the plea agreement unambiguously authorizes the trial court to impose a nine-year sentence. We agree that the plea agreement states that Defendant "shall receive a sentence of 9 years of incarceration." However, as the State recognizes, the plea agreement also provides that the sentence "shall be suspended such that there shall be no more than 24 months of potential actual incarceration ordered, with no fines." No language in the plea agreement clearly indicates that the requirement that at least seven years of the nine-year sentence be suspended applied only to the initial sentencing. Because the agreement does not state whether it applies to post-sentence proceedings, it is ambiguous in this respect. *Id.* at 1119. The State contends the final sentence of Defendant's plea agreement informed Defendant that he could serve the full nine-year term of incarceration if he violated his probation. That sentence states: "I fully understand that if, as part of this agreement, I am granted probation, a suspended sentence or a deferred sentence by the Court, the terms and conditions thereof are subject to modification in the event that I violate any of the terms or conditions imposed." We disagree. The sentence did not clearly inform Defendant that, if he violated his probation, the requirement that seven years of his nine-year sentence be suspended would not apply. The sentence is, at most, ambiguous because it is not clear whether the word "thereof" refers to "probation, suspended sentence or a deferred sentence," rather than to the words "this agreement." As such, it should be construed against the State. Consequently, we disagree with the State that the sentence imposed on Defendant was in accordance with the unambiguous terms of the plea agreement.

■ Because the plea agreement did not clearly state that the limitation on actual incarceration applied only to the initial sentencing, we decline to read into it language to that effect. If the State commits errors in the drafting of the plea agreement, judgment, or sentence, it will not be allowed to take advantage of those errors. *See Sisneros,* 98 N.M. at 281, 648 P.2d at 320. Such limiting language can be included in the agreement. Defendant introduced evidence that plea agreements reached in another judicial district, the Ninth, often contain language expressly limiting sentencing limitations to the initial sentencing; no such language was included in the plea agreement reached between Defendant and the State.

The failure of the State to include such language buttresses our interpretation of the agreement. Because the State is responsible for the drafting of the plea agreement, we will construe the agreement against the State. *See id.; see also Wills,* 765 P.2d at 1119 (ambiguous plea agreements read strictly against the State); *Citti,* 807 P.2d at 726 (State must clearly specify any reservation or condition in the plea agreement). We thus conclude that Defendant's plea agreement required the trial court to suspend at least seven years of Defendant's nine-year sentence and that this obligation applied to Defendant's sentencing following the revocation of his probation. As a result, Defendant's sentence of nine years was outside the parameters of the plea agreement.

The dissent views the majority's opinion as holding that extrinsic evidence should not be used to ascertain the meaning of the plea agreement where the terms of the agreement are ambiguous. That is not the case. Under the facts of this appeal, the State is seeking to use extrinsic evidence to *add* terms to the original plea agreement. Thus, we are not required to determine whether extrinsic evidence may be considered in construing the terms of a plea agreement itself when the language is ambiguous.

■ Having so held, we must now address the appropriate remedy. Defendant suggests we remand for resentencing and specific performance of his plea agreement. The State argues that Defendant is not entitled to specific performance because he has not detrimentally relied on the plea agreement. *See State v. Bourland,* 116 N.M. 349, 350, 862 P.2d 457, 458 (Ct.App.), *cert. denied,* 116 N.M. 364, 862 P.2d 1223 (1993). Specific performance will be required when vacating the plea will not put the defendant back into his earlier position. *State v. Smith,* 110 N.M. 534, 536, 797 P.2d 984, 986 (Ct.App.), *cert. denied,* 110 N.M. 533, 797 P.2d 983 (1990). A change in position due to reliance on the plea bargain can include testifying against a co-defendant, *id.,* or waiving extradition to serve a sentence in another state, *State v. Sykes,* 98 N.M. 458, 460, 649 P.2d 761, 763 (Ct.App.1982), *overruled on other grounds by Hayes v. State,* 106 N.M. 806, 751 P.2d 186 (1988).

■ Defendant points to the highly adverse publicity that resulted from his initial sentencing as demonstrating that he cannot be returned to his pre-plea position. *See United States v. Rewis,* 969 F.2d 985, 986 n. 1 (11th Cir.1992) (recognizing that sentencing errors may occur because of such factors as a hostile environment). This situation would make it difficult for Defendant to obtain a fair trial should his plea be vacated. Additionally, Defendant, by pleading nolo contendere and serving his original sentence, demonstrated reliance on the plea bargain and a willingness to abide by its terms. *See Sykes,* 98 N.M. at 461, 649 P.2d at 764. The plea bargain, as we have interpreted it, would not result in an illegal sentence because the trial court is authorized to suspend a portion of Defendant's sentence, *see* NMSA 1978, § 31–20–3(B) (Repl.Pamp.1990), and therefore Defendant is not limited to the remedy of withdrawing his plea, *cf. State v. Sisneros,* 98 N.M. 201, 203, 647 P.2d 403, 405 (1982) (correct remedy where sentence imposed pursuant to plea agreement was illegal is to allow defendant to withdraw his plea). We thus conclude that Defendant cannot be returned to his pre-plea position and is entitled to the relief he requests—resentencing in accordance with the plea agreement. *See State v. Trammel,* 100 N.M. 543, 546, 673 P.2d 827, 830 (Ct.App.1983) (where defendant has given up a constitutional right in exchange for a prosecutor's promise, appropriate relief within dictates of due process is to require prosecutor to keep promise; agreement should be terminated only if defendant did not comply).

## CONCLUSION

We hold that the limitations on the trial court's sentencing discretion contained in Defendant's plea agreement applied to Defendant's sentencing following revocation of his probation because the agreement did not specifically state that those limitations applied only to the initial sentencing. We therefore conclude that Defendant's sentence of nine years of incarceration violated his plea agreement and that this sentence should be vacated. We remand for resentencing in

accordance with Defendant's plea agreement and consistent with this opinion. At resentencing, the total incarceration, including time already served, shall not exceed the twenty-four-month limitation contained in the plea agreement.

**IT IS SO ORDERED.**

ALARID, J., concurs.

HARTZ, J., dissents.

HARTZ, Judge (dissenting).

I respectfully dissent. I would follow *Lucero v. Kerby*, 7 F.3d 1520 (10th Cir.1993), which interpreted essentially identical language in a New Mexico plea agreement. The district court's sentence should be affirmed.

I have two concerns about the approach taken by the majority in interpreting plea agreements: (1) the adoption of the rule that a plea agreement should always be strictly construed against the State, and (2) the apparent adoption of the rule that nothing outside the four corners of the document should be considered in interpreting such an agreement. As for the first concern, I would hesitate to adopt such a rule of construction without knowing more about the manner in which the agreement was drafted. If defense counsel is presented with a plea agreement on a standard form without any opportunity to negotiate the terms, then strict construction against the State may be proper. On the other hand, if language in the agreement was created as a result of negotiation between the prosecutor and defense counsel, I see no reason to construe the negotiated language strictly against the State. If the language in plea agreements is to be construed strictly against the State regardless of whether the language was negotiated with defense counsel, then the prudent course for prosecutors would be to develop a standard form and depart from the language of the form only in extraordinary circumstances. I doubt that such a practice would always benefit defendants.

The authorities cited by the majority in support of strict construction are not persuasive. *State v. Sisneros*, 98 N.M. 279, 281, 648 P.2d 318, 320 (Ct.App.1981), *rev'd on other grounds*, 98 N.M. 201, 647 P.2d 403 (1982), did not discuss the interpretation of plea agreements; it construed a judgment and sentence. *State v. Wills*, 244 Kan. 62, 765 P.2d 1114 (1988), is distinguishable because it assumed that the state "for all practical purposes controls the plea agreement process from negotiations to drafting the final agreement that is signed by the defendant." *Id.* 765 P.2d at 1119. I am unwilling to assume that plea agreements are always "negotiated" in that fashion.

Regarding my second concern, I am perplexed why the majority disapproves of the consideration of extrinsic evidence in interpreting plea agreements. *Sisneros* did not say that in interpreting plea agreements "our inquiry is limited to the 'parameters of the plea agreement.'" The sentence in *Sisneros* referred to by the majority opinion says only: "[The court] was barred from imposing a sentence which was outside the parameters of the plea agreement." *Sisneros*, 98 N.M. at 281, 648 P.2d at 320. *Wills* appears to accept the relevance of extrinsic evidence. *Wills*, 765 P.2d at 1119 (quoting from Comment, *Where Promises End: Prosecutorial Adherence to Sentence Recommendation Commitments in Plea Bargains*, 52 U.Chi. L.Rev. 751, 767–71 (1985)). In *Lucero* the Tenth Circuit Court of Appeals considered the conduct of the defendant and his attorney at sentencing when it construed the plea agreement at issue. The majority opinion itself looks outside the four corners of the plea agreement when it supports its construction of the agreement by noting that the agreement did not include language often contained in plea agreements reached in another judicial district. Our Supreme Court has recently said that "[w]ithout a full examination of the circumstances surrounding the making of the agreement, ambiguity or lack thereof often cannot properly be discerned." *Mark V, Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993).

I would adopt the Tenth Circuit Court of Appeals' view that "[w]e must construe the plea agreement according to what [the defendant] 'reasonably understood' when he entered his plea." *United States v. Hand*, 913 F.2d 854, 856 (10th Cir.1990) (quoting *United*

*States v. Shorteeth,* 887 F.2d 253, 256 (10th Cir.1989)). Adopting that standard, extrinsic evidence would certainly seem relevant in determining what the defendant "reasonably understood."

Turning to the particulars of this case, I agree with the majority that the plea agreement could have been drafted with greater precision. Nevertheless, I believe that the district court's construction of the plea agreement finds support in the sentence of the agreement that states: "I fully understand that if, as part of this agreement, I am granted probation, a suspended sentence or a deferred sentence by the Court, the terms and conditions thereof are subject to modification in the event that I violate any of the terms or the conditions imposed." The identical language appeared in the plea agreement considered in *Lucero.* In light of (1) the conduct of Defendant and his original counsel and (2) the district court's familiarity with the plea-agreement process in that district, I would defer to the district court's interpretation of the plea agreement and affirm the sentence imposed after Defendant violated the conditions of his probation.