No. 111,362

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JENNIFER LARAE BENNETT,
*Appellant*.

SYLLABUS BY THE COURT

1.

A defendant has a constitutional right to have a jury determine beyond a reasonable doubt any aggravating factor used by the court to impose an upward durational departure sentence. A court-conducted departure proceeding is unconstitutional unless the defendant has validly waived her or his right to have a jury determine the existence of such aggravating factors.

2.

To be constitutionally valid, a defendant's waiver of the right to a jury in an upward durational departure sentencing proceeding must be a voluntary, knowing, and intelligent act performed with sufficient knowledge of the relevant circumstances and likely consequences of that waiver. A guilty or no contest plea to a criminal offense, standing alone, does not constitute a voluntary, knowing, and intelligent waiver of the right to a jury for an upward durational departure sentence proceeding.

1

3.

A voluntary, knowing, and intelligent waiver by a criminal defendant of her or his statutory right to appeal as part of a plea agreement is generally enforceable. However, a plea agreement reasonably susceptible to different interpretations is ambiguous, and an ambiguous plea agreement must be strictly construed in favor of the defendant.

4.

A waiver of the right to appeal an upward durational departure sentence unconstitutionally imposed by the district court on a defendant who did not waive the right to a jury's determination of aggravating factors is unenforceable. An appellate court has jurisdiction to review the constitutionality of an upward durational departure proceeding and, if it was unconstitutional, any illegal sentence that resulted.

Appeal from Montgomery District Court; ROGER L. GOSSARD, judge. Opinion filed April 3, 2015. Sentence vacated, and case remanded for resentencing.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, of Office of Kansas Attorney General, for appellee.

Before STANDRIDGE, P.J., GREEN, J., and JOHNSON, S.J.

JOHNSON, J.: Jennifer Bennett was originally charged with off-grid first-degree murder. Under a plea agreement, she pled no contest to a reduced charge of second-degree murder, agreed to and received an upward durational departure sentence of 300 months in prison, and waived her right to appeal that sentence. On appeal, she asserts that her agreed-upon sentence was unconstitutionally imposed because she was never advised of and never waived her constitutional right to have aggravating factors that might justify

2

an enhanced sentence submitted to a jury to be proved beyond a reasonable doubt. The State argues that Bennett waived her right to appeal her sentence and that we have no jurisdiction to consider the merits of the appeal. We find that Bennett's waiver of her right to appeal her sentence is not technically implicated in this appeal, which is actually a challenge to the constitutionality of the procedure employed by the trial court to impose the resulting sentence. Even if we treat this as an appeal from the sentence, Bennett's sentence appeal waiver was ineffective and we would still entertain her appeal. Bennett's upward durational departure sentence was unconstitutionally imposed, so we vacate Bennett's illegal sentence and remand the case to the district court for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

On September 18, 2012, Bennett drove a vehicle off the road, over a sidewalk, and into a yard where she caused it to strike and injure Martin Dunn. Dunn and Bennett had been in a relationship and had one child together. Dunn died of his injuries. The State charged Bennett with off-grid first-degree murder. After plea negotiations the parties reached an agreement: The State would reduce the charge to second-degree murder in exchange for Bennett's no contest plea, her agreement to an upward durational departure sentence of 300 months in prison, and her waiver of her right to appeal the 300-month sentence.

The parties reduced their agreement to writing in two separate documents, one titled Defendant's Acknowledgement of Rights and Entry of Plea, the other titled Defendant's Acknowledgment of Rights and Petition to Enter Plea Pursuant to Plea Agreement. Bennett, her attorney, and the prosecutor signed each document.

The district court conducted the plea hearing on October 9, 2013. The court indicated at the outset that the sentencing range for the amended charge of second-degree murder was from 147 months to 653 months in prison, depending on Bennett's criminal

3

history. The court acknowledged that it had received a plea petition. Bennett's attorney stated the terms of the agreement for the court:

> "Your Honor, in exchange for the state filing this amended charge, Ms. Bennett will plead 'no contest' to the charge of Murder in the Second Degree. It's a level 1 person felony. Parties agree to recommend an upward durational departure sentence to 300 months with 36 months of post-release supervision.

> "Ms. Bennett is waiving her right to appeal and filing a 60-1507 motion, and that's set forth in the Petition to Enter a Plea Agreement and Acknowledgment of Rights. However, in the event that a sentence in excess of 300 months is entered by the Court, Ms. Bennett is retaining the right to appeal any sentence in excess of 300 months."

Defense counsel then asked that the district court accept Bennett's no contest plea to the amended charge.

The district court confirmed with Bennett that she had signed the written plea documents, that she was 23 years old, that she had completed 9 years of school, that she was taking Haldol, that her mind was clear, that she had been provided adequate time to discuss the plea with her attorney, and that she was satisfied with his advice and counsel. Regarding Bennett's jury trial rights, the judge stated:

> "You do need to understand that when you enter into a plea, you are giving up basic rights that you have. You're giving up your right to a jury trial; you're giving up your right to make the State prove you guilty beyond a reasonable doubt of this amended charge; you're giving up the right to have your attorney cross-examine the State's witnesses; you're giving up the right to call your own witnesses in your defense; you're giving up the right to remain silent.

> "Knowing that you're giving up all of these rights when you enter this 'no contest' plea, is it still your intention to go ahead with this plea this morning?"

4

Bennett answered: "Yes."

After confirming with Bennett that she had not been coerced into entering her plea, the district court stated to Bennett:

> "I want you to understand that your sentence—you have a plea agreement where there will be an upward departure to 300 months. The sentence will be up to the judge, and I'm sure Mr. Rickman [Bennett's attorney] has explained that to you. You're waiving your right to appeal the case, except that you may appeal it if the sentence is over 300 months.
>
> "Do you understand that?"

Bennett answered: "Yes."

The district court then advised Bennett that a presentence investigation would be done to determine her criminal history. The judge pointed out, though, that "[a]gain, you're looking at an upward departure to 300 months, so that's pretty well set in stone if the judge goes along with it, and most likely he will." The judge acknowledged that, under the plea agreement, "with your upward departure to 300 months, that may not be a factor, but I just wanted to explain that to you."

The State provided the factual basis for the plea. The court then found that Bennett had voluntarily entered her no contest plea. The judge again directly addressed Bennett:

> "Ms. Bennett, I want to ask you one more time, you understand that if this plea agreement is accepted by Judge Gossard, who will be the sentencing judge, you'll be sentenced to 300 months with the Kansas Department of Corrections and your plea agreement is that you're waiving your right to appeal the case? You're also not going to file any 60-1507 motion alleging ineffective counsel. Only if you're sentenced to more than 300 months do you have the right to appeal."

5

Bennett indicated that she understood.

The district court then found Bennett guilty of murder in the second degree, a level 1 person felony, and set the case for sentencing. At no time during the hearing did the district court refer to, let alone explain to Bennett, her separate right to have a jury determine the existence of aggravating factors that might justify an upward durational departure sentence. The record is also clear that Bennett did not waive her right to have a unanimous jury determine whether, beyond a reasonable doubt, such aggravating factors existed. The plea documents make no mention of the right to a jury determination on aggravating factors, and they do not contain a written waiver of that right.

On December 3, 2013, a different judge conducted the sentencing hearing. The court first stated that Bennett's criminal history score was H so her guidelines sentencing range was from 166 to 186 months in prison. It noted that the parties had joined in a motion for an upward durational departure to a 300-month prison sentence. It acknowledged that the motion proffered reasons to justify the sentence. The sentencing court then announced its departure decision: It found that Bennett intentionally struck the victim with her car and caused serious injuries that resulted in the victim's death and that those were "substantial and compelling circumstances to permit this Court to enter into an upward durational departure" to the agreed-upon 300-month sentence.

The sentencing judge did not ask the parties whether Bennett had waived or was waiving her right to submit the aggravating factors to a jury. Nor did the judge refer to Bennett's waiver of her right to appeal her sentence. Rather, at the conclusion of the hearing, the judge stated, "And, Ms. Bennett, you have a right to appeal the sentence if you think it is inconsistent with Kansas Sentencing Guidelines, case or statutory law, within 14 days of today's date. I think it is 14 days, isn't it, Mr. Rickman?" Bennett's attorney answered affirmatively. Neither attorney pointed out to the court, or to Bennett

for that matter, that Bennett had indicated at her plea hearing that she was waiving her right to appeal a 300-month sentence.

Within 14 days of her sentencing, Bennett timely appealed.

ANALYSIS

Bennett argues that her upward durational departure sentence was unconstitutionally imposed and is therefore an illegal sentence. She points out that she was never informed on the record of her separate right to a jury for the departure phase of her sentencing and that she never waived her right to that separate jury proceeding. She claims that, because a district judge imposed the departure sentence without submitting the aggravating factors to a jury to be proved beyond a reasonable doubt, the sentencing was conducted in violation of the holding in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), K.S.A. 2014 Supp. 21-6815(b), and K.S.A. 2014 Supp. 21-6817(b) (codifying *Apprendi* as to upward durational departure sentences).

The State does not actually challenge Bennett's claim that the sentencing procedure employed by the trial court was unconstitutional. Rather, the State contends that we are without jurisdiction to consider Bennett's claim because Bennett waived her right to appeal her sentence. We first explain why Bennett's sentence is unconstitutional to place in context our rejection of the State's challenge to our jurisdiction.

The facts here are undisputed. They are contained in the plea agreement documents and transcripts of the plea and sentencing hearings. Thus, the State's challenge to our jurisdiction based on Bennett's appeal waiver involves a question of law subject to our unlimited review. See *State v. Patton*, 287 Kan. 200, 205-06, 195 P.3d 753 (2008). Whether Bennett waived her right to a jury trial such that the district court could

7

determine the existence of aggravating factors is also a question of law subject to our unlimited review. See *State v. Duncan*, 291 Kan. 467, 470, 243 P.3d 338 (2010).

*The District Court Conducted an Unconstitutional Departure Proceeding.*

Other than the sentencing appeal waiver aspect of this case, the plea hearing facts here are quite similar to the facts in *Duncan*. There, Duncan pled guilty to a reduced charge but agreed to a specific upward durational departure sentence. After a colloquy with the district court, he waived all of the rights that are associated with the guilt phase of a jury trial and pled guilty. However, the district court did not ask him to and he did not waive his right to have a jury determine the existence of aggravating factors. The district court imposed the agreed-upon enhanced sentence and granted him probation.

Subsequently the court revoked that probation. Duncan appealed, claiming that his sentence was illegally imposed because he had not specifically waived his right to a jury trial on the existence of aggravating factors for the upward durational departure sentence. The State responded that Duncan's guilty plea and general waiver of his right to a jury trial were broad enough to include a waiver of his right to a jury on the departure factors. Moreover, the State pointed out that Duncan had expressly agreed to the very sentence that he was appealing. The State contended that the applicable statute then in effect barred review of "'any sentence resulting from an agreement between the state and the defendant which the sentencing court approves on the record.'" 291 Kan. at 470 (quoting K.S.A. 21-4721[c][2]).

Our Supreme Court rejected the State's arguments. Regarding jurisdiction, the court held that the statute did not bar its review of Duncan's illegal sentencing claim, stating: "We find this court has jurisdiction to review a sentence that is challenged as being illegal." 291 Kan. at 471.

8

On the merits, the court cited *Apprendi*, 530 U.S. at 490, for the constitutional proposition that any factor used to enhance a sentence beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Duncan*, 291 Kan. at 471. It then recognized that our legislature had codified *Apprendi* in a manner that was constitutional. 291 Kan. at 471; see K.S.A. 21-4718 (now at K.S.A. 2014 Supp. 21-6817). It acknowledged that the United States Supreme Court and our statutes permit a defendant to waive the right to a jury determination on the existence of aggravating factors. 291 Kan. at 471-72; see *Blakely v. Washington*, 542 U.S. 296, 310, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004); K.S.A. 2014 Supp. 21-6817(b)(4); K.S.A. 22-3403. It reiterated that, "to be constitutionally valid, a waiver of rights in guilty or no contest pleas must be voluntary, knowing, and intelligent acts performed with sufficient knowledge of the relevant circumstances and likely consequences." 291 Kan. at 472. It noted that in order to satisfy due process, a waiver must be an intentional abandonment or relinquishment of a known right or privilege. 291 Kan. at 472. The court stated:  "As such, to waive the right to a jury in an upward durational departure proceeding, the defendant must do more than consent to the sentence." 291 Kan. at 472.

The *Duncan* court then reviewed the plea documents and the transcript of the plea hearing. It confirmed that there had been no written or oral explanation of Duncan's separate right to a jury determination on aggravating factors and no express waiver of the right to such a determination. The court cited what it had previously said in *State v. Horn*, 291 Kan. 1, 11-12, 238 P.3d 238 (2010), and reiterated that "the failure to obtain a constitutionally valid waiver of a defendant's right to a jury determination of the aggravating factors necessarily precluded the district court from conducting the upward durational departure proceeding." *Duncan*, 291 Kan. at 473. Because Duncan had not waived his right to a jury for the departure phase of his sentencing, the court held that the departure sentence based on judicial fact-finding violated the mandates of the constitution. 291 Kan. at 471-73.

9

The *Duncan* court vacated Duncan's otherwise agreed-upon sentence and "remanded to the district court for resentencing without an upward durational departure because the statute does not permit the district court to empanel a jury solely to consider Duncan's aggravating factors." *Duncan*, 291 Kan. at 473; see also *Horn*, 291 Kan. at 11-12 (finding that the failure to obtain a valid waiver of the right to have a jury determine aggravating factors precludes a court-conducted upward departure proceeding). After our Supreme Court decided *Horn* and *Duncan*, the legislature amended K.S.A. 21-4718(b)(4). See K.S.A. 2014 Supp. 21-6817(b)(4).

Here, as in *Duncan*, Bennett was never advised on the record of her right to have the aggravating factors determined by a unanimous jury beyond a reasonable doubt. She never waived that right, either orally or in writing. In light of *Duncan* and *Horn*, the judicial fact-finding on aggravated factors that resulted in Bennett's upward durational departure sentence was clearly unconstitutional, making the sentence illegal.

*The State Asserts That We Have No Jurisdiction over This Appeal.*

The State essentially argues that, regardless of any sentencing error, we have no jurisdiction over Bennett's appeal because she knowingly and voluntarily waived the right to appeal her sentence. We disagree for the following reasons.

*Bennett Appeals from Her Unconstitutional Sentencing, Not from the Resulting Sentence.*

First, a reading of Bennett's brief clearly shows that her claim on appeal is that the district court employed an unconstitutional procedure to impose her upward durational departure sentence. She simply points out that a departure sentence imposed unconstitutionally is, by definition, illegal.

10

Bennett's sentencing proceeding was, in fact, unconstitutional. Since that is the case, Bennett's sentence appeal waiver does not apply because she is not per se appealing the sentence but, rather, the sentencing procedure. This is a distinction with a jurisdictional difference. Even if Bennett waived the right to appeal her sentence she never waived her right to appeal the denial of her right to a constitutional sentencing. For that reason alone, we have jurisdiction over Bennett's appeal. Nevertheless, we will further analyze the State's sentence appeal waiver claims.

*The Plea Agreement Here Is Ambiguous on the Sentence Appeal Waiver.*

We know from *Duncan* that a defendant can appeal an illegal upward durational departure sentence even when it results from a plea agreement. K.S.A. 2014 Supp. 21-6820; *Duncan*, 291 Kan. 470-71. However, we acknowledge that, as the State contends, a defendant's knowing and voluntary waiver of the statutory right to appeal a sentence is generally enforceable. *Patton*, 287 Kan. 200, Syl. ¶ 13.

The sentence appeal waiver at issue here was part of a plea agreement. A plea agreement reasonably susceptible to different interpretations is ambiguous. *State v. Case*, 289 Kan. 457, 462, 213 P.3d 429 (2009); *State v. Wills*, 244 Kan. 62, Syl. ¶ 2, 765 P.2d 1114 (1988). An ambiguous plea agreement must be strictly construed in favor of the defendant. *Patton*, 287 Kan. at 228-29; *Wills*, 244 Kan. 62, Syl. ¶ 1.

The key question according to the State, then, is whether Bennett knowingly, voluntarily, and unambiguously waived her right to appeal even a sentence unconstitutionally imposed. The State points out that Bennett explicitly said she waived her right to appeal a 300-month departure sentence both in documents and at the plea hearing. The district judge who heard Bennett's plea confirmed directly with Bennett that she understood she was waiving the right to appeal any sentence imposed of 300 months' imprisonment or less.

11

But, as clear as those acknowledgments may seem, there are other indications in the record that cast doubt on whether the sentence appeal waiver in this plea agreement can be deemed unambiguous. For example, the written plea documents also contain the following statements:

- "I know I have a limited right to appeal the sentence that is imposed . . . ."

- "I may appeal from a sentence that departs from the presumptive sentence."

- "I understand that I will be sentenced according to what the Court determines to be my actual criminal history as of the date I am sentenced."

Also, importantly, the last thing the sentencing judge told Bennett was that she had the right to appeal her sentence within 14 days, stating, "And, Ms. Bennett, you have a right to appeal the sentence if you think it is inconsistent with Kansas Sentencing Guidelines, case or statutory law, within 14 days of today's date." Neither attorney attempted to contradict the court's statement. A similar judicial statement was made in *Patton.* That court emphasized the importance of such judicial advice when it declined to give effect to a claimed sentence appeal waiver: "The sentencing transcript demonstrates irrefutably that the judge told Patton his right to appeal remained intact . . . ." Patton, 287 Kan. at 227.

Here, Bennett did file her appeal within the 14-day appeal time the sentencing judge gave her. The *Patton* court, in somewhat similar circumstances, stated:

"Moreover, to the extent the immediately subsequent behavior of the defendant is revealing of his understanding of what he had waived and what he had not waived at the time of his plea and/or sentencing, there is no dispute that Patton attempted to appeal his

12

sentence within 10 days. In other words, it is apparent he believed he would not be prevented from doing so." *Patton*, 287 Kan. at 227.

We can draw the same inference from Bennett's filing of her appeal.

Thus, we have here a collision of otherwise unambiguous statements and actions. Bennett gave up her right to appeal her sentence in the plea documents, but, in those same documents, she was assured that she could appeal her sentence. At the plea hearing the judge told her that she could not appeal a sentence of 300 months, but, at the sentencing hearing where that sentence was actually imposed, the judge informed her that she could appeal her sentence. The result of this collision of unambiguous statements and actions is ambiguity. Such an ambiguous plea agreement must be strictly construed in favor of the defendant, and we decline to enforce Bennett's waiver of her right to appeal her illegal sentence. See *Wills*, 244 Kan. 62, ¶ 1.

*Bennett Did Not Intentionally Relinquish a Known Right in Her Sentence Appeal Waiver.*

There is yet another, more basic reason to reject the State's jurisdictional challenge. The *Duncan* court stated, albeit in the context of a departure jury waiver, general rules for testing the validity of any waiver of a constitutional or statutory right. We see no reason why those tests would not apply to Bennett's waiver of her statutory right to appeal her sentence. Again, to be constitutionally valid, a waiver of rights must be a voluntary, knowing, and intelligent act performed with sufficient knowledge of the relevant circumstances and likely consequences. *Duncan*, 291 Kan. at 472. In order to satisfy due process, a waiver must be an intentional abandonment or relinquishment of a known right or privilege. 291 Kan. at 472; see *State v. Copes*, 290 Kan. 209, 218, 224 P.3d 571 (2010).

13

In *Copes,* Copes' plea agreement required that she reimburse the Board of Indigents' Defense Services (BIDS) for her attorney fees. The amount at that time was unknown. At sentencing the district court ordered Copes to pay $350 toward BIDS reimbursement, but the court did not consider her financial resources or the burden such a payment would impose on her as required in K.S.A. 22-4513. Copes appealed the district court's order for BIDS fee reimbursement. The State claimed that Copes had waived her right to challenge the assessment by agreeing to pay BIDS fees in her plea agreement. The *Copes* court viewed the plea agreement in the light of contract principles, noting that there must be a meeting of the minds in order to form a binding contract. *Copes*, 290 Kan. at 217. The court stated: "Although Copes' written plea agreement contained an extensive recitation of rights and an explicit waiver of those rights, *that recitation made no mention of attorney fees or the district court's obligation to consider Copes' financial resources or the burden the fees would impose.*" (Emphasis added.) 290 Kan. at 217. The court found that Copes needed to be aware of this information before she could make an enforceable waiver of the protections in K.S.A. 22-4513. Because Copes did not have that information, she could not properly waive what was actually an unknown right. Even though Copes had agreed to reimburse BIDS, the court declined to find that Copes intentionally relinquished her right to have her BIDS fees set pursuant to statute. The *Copes* court reversed and remanded for a determination of the appropriate BIDS reimbursement under K.S.A. 22-4513. 290 Kan. at 218.

Here, Bennett, under her plea agreement, purportedly waived her right to appeal a 300-month sentence. The record is clear: Bennett was never advised on the record at her plea or sentencing hearings or in the plea documents of the district court's sentencing obligation to submit her departure factors to a jury or obtain her waiver of that right. As in *Copes*, Bennett's plea agreement did not include the information necessary for her to make a knowing and voluntary waiver of her right to appeal a sentence that would be subsequently, unconstitutionally imposed. There could be no meeting of the minds here because the "contract," *i.e.*, the written and oral statements of the plea agreement, was all

14

silent on how an upward durational departure sentence must be imposed. Bennett clearly did not intentionally relinquish a known right, *i.e.*, the right to appeal from the violation of her constitutional right to a jury determination of aggravating factors. An unintentional abandonment or relinquishment of an unknown right or privilege cannot result in an enforceable waiver of that unknown right.

*A Sentence Appeal Waiver Cannot Vitiate an Unconstitutionally Imposed Sentence.*

Our Constitutions and statutes guarantee that a criminal defendant is entitled to a trial by jury. See U.S. Const. amend. VI; Kan. Const. Bill of Rights, §§ 5, 10. "There is no more fundamental right in the United States than the right to a jury trial." *State v. Larraco*, 32 Kan. App. 2d 996, 999, 93 P.3d 725 (2004). These constitutional rights are codified in K.S.A. 22-3403(1), which requires that all felony cases be tried to a jury unless the defendant and prosecuting attorney, with the consent of the court, submit the matter to a bench trial. The parties and the court did not follow that statute here.

As noted above, K.S.A. 2014 Supp. 21-6817(b)(4) specifically permits a judge-tried upward durational departure proceeding, but only when the jury trial requirements of the statute have been properly waived under K.S.A. 22-3403. The right to a jury determination of aggravating factors is no less important, constitutionally, than the right to a jury trial on the issue of guilt. Each of those are aspects of the right to trial by jury guaranteed by the Fifth Amendment's Due Process Clause, the Sixth Amendment's right to trial by jury, and the Fourteenth Amendment's application of those provisions to state actions. *Apprendi*, 530 U.S. at 476-77.

We read those statutes, the constitutional provisions regarding the right to a jury trial, *Horn* and *Duncan*, in a way that exalts Bennett's constitutional right to a departure-factor jury and defeats any waiver of her statutory right to appeal this unconstitutionally imposed sentence. *Horn* and *Duncan* confirm that our Constitutions "precluded" the

15

district court from doing what it did here, *i.e.*, imposing an upward departure sentence without a proper departure jury waiver. We do not believe that Bennett or the State, via the backdoor of a plea agreement sentence appeal waiver, can empower the district court to do what the Constitution precluded it from doing.

The waiver of a departure sentence appeal when the correct statutory procedure to impose that departure has not been explained to the defendant prevents the waiver from being knowing and voluntary, and it is unenforceable. See *Copes*, 290 Kan. at 217-18. Such a waiver is merely another way to consent to a sentence. It cannot cure the defect in the underlying departure process that is actually at issue here. The *Duncan* court required an actual waiver of the departure jury:  "As such, to waive the right to a jury in an upward durational departure proceeding, the defendant must do more than consent to the sentence," *Duncan*, 291 Kan. 472, or, in our case, agree not to appeal such a sentence. Bennett's sentence appeal waiver, even if it had been unambiguously made, would not have been effective to vitiate the constitutional infirmity in her departure sentence. There simply must be a jury waiver before the court can constitutionally impose an upward durational departure sentence. For that reason alone, we have jurisdiction to review Bennett's unconstitutional sentencing and the resulting illegal sentence.

To implement a plea agreement like the one contemplated here, the defendant must voluntarily, knowingly, and intelligently waive the right to a jury trial regarding guilt; voluntarily, knowingly, and intelligently waive the submission of aggravating factors to a jury to be proved beyond a reasonable doubt; and voluntarily, knowingly, intelligently, and unambiguously waive the right to appeal an upward durational departure sentence. Those things can be done, but they were not done here. Bennett's unconstitutional sentence cannot be allowed to stand, regardless of her purported sentence appeal waiver.

16

We reverse the district court's decision to impose an upward durational departure sentence without first obtaining Bennett's informed waiver of her right to submit the aggravating factors to a jury for proof beyond a reasonable doubt. We vacate Bennett's sentence and remand the case to the district court for resentencing.