NOT DESIGNATED FOR PUBLICATION

No. 115,884

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

ANDREA CROSS,
*Appellee*.

MEMORANDUM OPINION

Appeal from McPherson District Court; JOHN B. KLENDA, judge. Opinion filed September 22, 2017. Affirmed.

*Jamie L. Karasek*, deputy county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Brent A. Boyer*, of Boyer & Price Law Office, P.A., of McPherson, for appellee.

Before ATCHESON, P.J., MALONE and POWELL, JJ.

PER CURIAM:  Defendant Andrea Cross didn't show up for her trial in McPherson County District Court in 2005 on misdemeanor charges for possession of marijuana and drug paraphernalia. The district court issued a bench warrant for Cross' arrest. Then nothing happened—literally—for more than 10 years. The county sheriff's department took no steps to find Cross, and she never stepped forward to resolve the case. In 2015, the county attorney entered the warrant in a computer database law enforcement agencies routinely consult to determine if individuals have unresolved criminal matters. Cross was arrested on the warrant in January 2016. The district court granted her motion to dismiss the charges, relying principally on due process grounds and mostly discounting Cross'

1

constitutional speedy trial argument. The State has appealed. Applying the multifaceted considerations bearing on Cross' speedy trial rights, we affirm.

FACTUAL AND PROCEDURAL HISTORY

The facts underlying the criminal charges are themselves immaterial here. Cross apparently had a chance encounter with a City of McPherson police officer and admitted to having a small amount of marijuana and a pipe. As a result, Cross was charged in district court with two misdemeanors. The case was set for trial in June 2005. Cross' court-appointed lawyer showed up, but she didn't. The district court issued a bench warrant for her arrest. At the motion hearing in 2016, Cross didn't offer a concrete explanation for her failure to appear. She said she had been living with relatives and moving around a lot in 2005, so she speculated that she might not have gotten any notification about the trial date.

The county sheriff's office received the bench warrant. For purposes of these proceedings, the county attorney and Cross agree that the sheriff's office did not enter the warrant into NCIC or any other law enforcement computer database. They also agree that the sheriff's office acted (or failed to act) in conformity with its policies and procedures rather than because of inadvertence or oversight. The sheriff's office apparently took no other steps to find Cross or to execute the bench warrant.

The county attorney's office has represented for purposes of these proceedings that it had no independent authority to enter warrants into law enforcement databases until 2012. Nonetheless, the county attorney waited until mid-2015 to place the bench warrant for Cross in a database for Kansas law enforcement officers. As we noted, Cross was arrested on the bench warrant in January 2016 and spent about 10 days in jail before bonding out.

2

Acting through her lawyer, Cross filed a motion to dismiss the charges because the delay compromised her constitutional rights. The district court held an evidentiary hearing on the motion on February 25, 2016, at which Cross was the only witness. The undisputed evidence shows Cross did not flee the state, adopt an alias, or otherwise attempt to hide out after failing to appear for trial in 2005. Cross testified that she has lived continuously in Kansas during that time and has held an official Kansas identification card. She said she has generally kept the residence address associated with the identification card current over the years.

Cross testified that she interacted with Kansas law enforcement agencies several times since 2005. She was arrested, prosecuted, and convicted for driving under the influence in Cowley County in late 2005. Cross testified that since then she contacted law enforcement agencies twice related to what she characterized as "domestic situations." The most recent one resulted in her arrest on the bench warrant. Cross contacted the Newton police regarding the theft of her computer, and the responding officer discovered the bench warrant upon running a computer check of her name and birthdate.

Cross agreed that during none of those contacts did she mention the unresolved charges in McPherson County. And, of course, she never took any affirmative steps to resolve this case.

In a bench ruling, the district court found that under the circumstances the long delay compromised Cross' due process rights embodied in the Fourteenth Amendment to the United States Constitution and granted her motion to dismiss. The district court more or less put aside Cross' alternative argument the delay violated her constitutional speedy trial rights protected in the Sixth Amendment to the United States Constitution as incorporated and applied to the states through the Fourteenth Amendment. See *Klopfer v. North Carolina*, 386 U.S. 213, 222, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967); *State v.*

3

*Pressley*, 290 Kan. 24, 27, 223 P.3d 299 (2010). The district court entered a journal entry reflecting the dismissal. The State has appealed. See K.S.A. 2016 Supp. 22-3602(b)(1).

LEGAL ANALYSIS

From our vantage point, we see no disputed material facts related to Cross' motion to dismiss or the district court's ruling. Accordingly, the propriety of that ruling presents a question of law over which we exercise unlimited review. See *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010) (appellate court exercises unlimited review over question of law); *State v. Bennett*, 51 Kan. App. 2d 356, 361, 347 P.3d 229 (when material facts undisputed, issue presents question of law), *rev. denied* 303 Kan. 1079 (2015); *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 258-59, 261 P.3d 943 (2011) (legal effect of undisputed facts question of law).

We think the constitutional right at issue here is grounded in speedy trial rather than due process. First, that is the more particularly applicable right. Second, procedural due process entails the right of a person to be heard in a meaningful way before being deprived of a protected property right or liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' [Citation omitted.]"); *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (The Due Process Clause "at a minimum" requires that "deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."); *State v. King*, 288 Kan. 333, 354, 204 P.3d 585 (2009). Cross, like other criminal defendants, faced a loss of liberty as a result of the charges against her. The primary due process protection against the wrongful deprivation of liberty in a criminal prosecution resides in a trial to a jury or a judge sitting without a jury. Here, Cross argues that the exceptional delay in affording her a trial has compromised her right to due process. But, of course, that is also—

4

essentially verbatim—her speedy trial claim. Logically, then, the same analytical model ought to be applied to an ostensible violation of those rights when the due process claim rests on a delay in affording a criminal defendant a trial. If the test for that due process violation were more expansive, then the Due Process Clause wouldn't so much incorporate the Sixth Amendment right to speedy trial as supplant it.

For nearly half a century, constitutional speedy trial claims have been measured by the standard set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). The *Barker* Court specifically identified four factors: (1) the length of delay; (2) the reasons for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant arising from the delay. 407 U.S. at 530; see *In re Care & Treatment of Ellison*, 305 Kan. 519, Syl. ¶ 2, 385 P.3d 15 (2016) (recognizing continued viability of *Barker* test for constitutional speedy trial rights). They should be considered holistically to gauge the impact of the relevant circumstances in a given case. *Barker*, 407 U.S. at 530, 533; *State v. Rivera*, 277 Kan. 109, 113, 83 P.3d 169 (2004); *State v. Waldrup*, 46 Kan. App. 2d 656, 679, 263 P.3d 867 (2011). Thus, "any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." *Barker*, 407 U.S. at 522. The *Barker* Court acknowledged the identified factors to be nonexclusive. *Barker*, 407 U.S. at 530. The speedy trial assessment in a given case, then, really looks at the totality of the circumstances with special emphasis on those explicitly identified considerations. See *In re Care & Treatment of Ellison*, 305 Kan. at 531 (describing *Barker* as establishing an "'ad hoc'" approach to assessing speedy trial rights).

As discussed in *Barker* and since applied elsewhere, the length of delay operates, in part, as a gatekeeper to the remaining factors. That is, a defendant, in light of the circumstances of his or her case, must show that the trial delay may be considered likely or presumptively prejudicial. *Barker*, 407 U.S. at 530-31; *Waldrup*, 46 Kan. App. 2d at 679. As the *Barker* Court pointed out, a delay that might be tolerable for a "serious, complex conspiracy charge" would be entirely unacceptable for "an ordinary street

crime." *Barker*, 407 U.S. at 530-31. Here, the crimes were straightforward, and the delay exceeded 10 years. The circumstances satisfy the requirement for presumptive prejudice. In addition, however, the length of the delay in this case is itself remarkable and figures into the overall analysis of the claimed speedy trial violation. See *Doggett v. United States*, 505 U.S. 647, 652, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992).

The second factor essentially attempts to assess responsibility for the delay as between the government and the defendant. 505 U.S. at 651. In this case, each is partly responsible. As the district court pointed out, Cross could have stepped forward at any time to resolve the charges and, thus, to secure her right to a trial. But she didn't. Cross' decision to flee and her later inaction, however, do not create a legal bar to her speedy trial claim—they reflect circumstances to be taken into account and weighed against relief. See 505 U.S. at 653 (flight with knowledge of pending charges does not preclude speedy trial claim but counts against defendant, especially as to his or her assertion of right); *Rivera*, 277 Kan. at 117 (defendant's escape from custody weighed in constitutional speedy trial analysis but imposed no absolute bar to claimed violation).

On the other side of the ledger, the State *deliberately* did nothing to enforce the bench warrant. The county sheriff's office decided to provide no notification of the warrant to other law enforcement agencies. In this case, Cross likely would have been held on the warrant as a result of her arrest for DUI in Cowley County within months after her failure to appear. The sheriff's office, likewise, did nothing to look for Cross, who was living elsewhere in the state but had taken no steps to hide from authorities. As we have said, Cross did not assume a false name or otherwise attempt to live "off the grid." The county attorney's office has represented that some bureaucratic obstacle prevented it from independently giving notice of the warrant to law enforcement agencies until 2012. But even after that impediment had been removed, the county attorney did not act on the warrant for nearly three years. The investigatory machinery of the government lay idle in this case for a decade. And there is every reason to believe the machinery

6

would have been efficiently effective in locating Cross had it been engaged. Cf. *Doggett*, 505 U.S. at 657 ("The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice."); *Rivera*, 277 Kan. at 114 (suggesting for constitutional speedy trial purposes government's deliberate delay should tilt more toward violation than negligent or "neutral" conduct resulting in delay).

The third factor looks at the defendant's assertion of his or her constitutional right to a speedy trial. Cross, of course, did not invoke her right until very late in the delay she now assails. And that counts against her. But Cross' inaction does not wholly excuse or erase the delay up to that point. See *Barker*, 407 U.S. at 525 (Court declines to presume waiver of Sixth Amendment speedy trial right from inaction); 407 U.S. at 528 (rejecting a "rule that a defendant who fails to demand a speedy trial forever waives his right").

The fourth explicit factor in *Barker* delves into prejudice the delay may have caused, particularly to the defendant. The Court identified three types of potential prejudice to a defendant arising from a speedy trial violation: oppressive pretrial incarceration; a defendant's anxiety and concern sparked by the ongoing proceedings; and possible impairment of the defense. *Barker*, 407 U.S. at 532; see *Rivera*, 277 Kan. at 118. Here, Cross was not in custody during the challenged delay. Nor does the record indicate she suffered any appreciable emotional upset because the charges remained unresolved.

At the hearing on her motion, Cross testified that her recollection of the circumstances giving rise to the charges was "a little hazy on some things" and that "I don't remember all of what happened." But she never translated her dimmed recollection into an argument that some defense to the charges had been materially impaired as a result. A defendant, however, need not show actual prejudice to support a constitutional speedy trial claim. As the *Doggett* Court recognized, "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that

7

matter, identify." *Doggett*, 505 U.S. at 655. Accordingly, prejudice for speedy trial purposes "is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim." 505 U.S. at 655. Although that sort of latent prejudice "cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria [citation omitted], it is part of the mix of relevant facts." 505 U.S. at 655-56. The longer the delay, the greater the significance of such intangible degradation of the trial process generally. 505 U.S. at 656.

The charges themselves are a final consideration here, consistent with the holistic review of constitutional speedy trial claims. Possession of a small amount of marijuana and a pipe are misdemeanors. We don't intend to minimize the significance of misdemeanors as a class of crimes. Nonetheless, these offenses may be set apart from most other misdemeanors as being less threatening or pernicious. They involve no impermissible physical contact with another person, see, e.g., domestic battery, K.S.A. 2016 Supp. 21-5414(a); sexual battery, K.S.A. 2016 Supp. 21-5505(a), or threats of physical harm, see, e.g., assault, K.S.A. 2016 Supp. 21-5412(a). And they entail no deprivation of or interference with another person's property, see, e.g., theft, K.S.A. 2016 Supp. 21-5801(a); giving a worthless check, K.S.A. 2016 Supp. 21-5821(a). All crimes are not created equal, and that makes at least some difference in assessing constitutional speedy trial claims, especially where, as here, the government has evinced a lack of interest in pursuing a defendant who has taken flight.

Assessing all of the circumstances, we affirm the district court's decision to dismiss the charges against Cross. We find the undisputed evidence establishes a violation of her Sixth Amendment right to a speedy trial. Two considerations stand out as particularly significant here. First is the length of the delay, stretching beyond 10 years, and the presumptively negative effect a delay of that duration has on a trial as a mechanism for uncovering the truth. Second is the government's deliberate decision to do nothing to find Cross during most of that time. We have not been favored with the

8

particulars of the policy or the precise reasons for that studied inaction. The nature of the charges may have accounted for the government's determination to allocate no resources to executing the bench warrant. In any event, we find those factors outweigh Cross' decision not to appear for trial and her inaction in rectifying her mistake.

Affirmed.