IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 125,535

STATE OF KANSAS,
*Appellee,*

v.

DAVID CORNELL BENNETT JR.,
*Appellant.*

SYLLABUS BY THE COURT

*State v. Ortiz*, 230 Kan. 733, 640 P.2d 1255 (1982), may allow a late appeal if a criminal defendant (1) was not informed of his or her right to appeal, (2) was not furnished an attorney to perfect an appeal, or (3) was furnished an attorney who failed to perfect an appeal.

Appeal from Labette District Court; STEVEN A. STOCKARD, judge. Submitted without oral argument November 3, 2023. Opinion filed June 21, 2024. Affirmed.

*Clayton J. Perkins*, *Caroline M. Zuschek*, and *Kathryn D. Stevenson*, of Capital Appellate Defender Office, were on the briefs for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.:  David Cornell Bennett Jr. pled guilty to one count of capital murder and three counts of premeditated first-degree murder pursuant to a plea agreement in

1

December 2017. As part of that agreement, the State agreed to dismiss other charges for rape and criminal threat and Bennett agreed to waive his appellate rights. Bennett did not attempt to subsequently file any timely appeal.

On June 30, 2020, Bennett filed a pro se motion requesting a hearing under *State v. Ortiz*, 230 Kan. 733, 640 P.2d 1255 (1982). In his motion, Bennett alleged that he was entitled to file an out-of-time appeal because his appointed counsel did not file his direct appeal as requested following his sentencing hearing. The State argued that even if Bennett's counsel failed to file an appeal, Bennett had already waived his appellate rights under the plea agreement. Bennett filed a pro se response alleging that his counsel was ineffective during plea negotiations.

On May 20, 2022, the district court held a hearing on Bennett's pro se motion. The district court appointed counsel for Bennett and he was able to present evidence, in the form of his own testimony, that he had directed counsel to file a timely notice of appeal; that he did not believe he had waived his appellate rights; and that he did not understand the extent to which he waived his appellate rights under the plea agreement.

The State called one of Bennett's attorneys as a witness. That attorney testified that he believed Bennett had signed an especially comprehensive "blanket waiver of appeal"; that he had discussed these provisions with Bennett; and that he had been concerned Bennett was not taking them seriously, so he really had to "slow him down and make [Bennett] go through the document." The attorney also testified that Bennett did contact him after sentencing, but unequivocally stated that Bennett did not ask him to file a direct appeal.

The district court denied Bennett's motion, finding that evidence presented at the hearing and in the record supported a finding that Bennett clearly waived his appellate rights and failed to allege why he should be entitled to an *Ortiz* hearing. The district court

found the attorney's testimony credible; that Bennett had understood the waiver; did not ask any questions about it; signed it; and did so freely and voluntarily with the advice of counsel. The district court also specifically held that Bennett's testimony lacked credibility, and he was trying to undo what he had knowingly done.

Bennett appealed the district court's denial of his pro se motion to this court. He offers two arguments for why he is entitled to an *Ortiz* hearing. First, he argues that his waiver of appellate rights was ambiguous both on its face and on the record as a whole and therefore the waiver was not effective as a blanket waiver. Second, he reiterates his argument that he is entitled to a late appeal under the criteria set forth in *Ortiz*.

A district court's decision on whether an exception under *Ortiz* applies in a given case is reviewed on appeal under a dual standard. We review the facts underlying the district court's ruling for substantial competent evidence. The legal conclusion made by the district court on those facts as to whether the exception applies is reviewed de novo. *State v. Smith*, 312 Kan. 876, 887, 482 P.3d 586 (2021).

*Bennett has not established ambiguity during his plea process.*

The relevant language from Bennett's plea agreement states:

> "As a condition of this negotiated resolution, and as recognized by *State v. Patton*, 287 Kan. 200 (2008), the defendant agrees to waive his right to appeal or collaterally attack, under Kansas state statutes, the prosecution, convictions, sentence or terms set forth in this plea agreement. In addition, the defendant waives his right to pursue habeas corpus claims under the Federal Constitution, statutes or case law interpreting the same. Further, Defendant David Cornell Bennett Jr. agrees to waive his right to pursue any claim that the above and foregoing negotiated plea agreement violates the bar under the Kansas and Federal Constitutions to double jeopardy, statutes or case law interpreting the same."

3

Additionally, Bennett signed an "Entry of Plea" which contained the following term:

"I understand that despite my plea of guilty, I retain a limited right to appeal. I may not directly appeal my conviction, and I understand the appellate courts generally will not directly appeal my conviction, and I understand the appellate courts generally will not entertain an appeal from (a) an agreed-upon sentence approved by the court on the record, (b) a presumptive sentence, or (c) the denial of a departure motion. In any appeal, however, I may challenge my criminal history score and any crime severity level determinations that affect my sentence. I may appeal from a sentence that departs from the presumptive sentence. I understand that any appeal must be filed within fourteen days of the date sentence is imposed and that I must timely tell my attorney about my desire to appeal. If I cannot afford an attorney or the costs of an appeal, the court will appoint an attorney to represent me and will order that any relevant transcripts be provided to my attorney."

At the plea hearing, Bennett stated that he had conferred with his counsel about the terms of the plea agreement. Bennett also stated that he had signed the plea agreement; that he understood the agreement; and that he had conferred with counsel about the agreement. The court also directly asked Bennett "do you understand that if you thought your Constitutional rights were violated, that by entering this plea, you're waiving any claims, including any appeal?" to which Bennett answered, "Yes."

At sentencing in February 2018, Bennett appeared in person with counsel. Bennett waived his right to allocution and to be present during the sentencing hearing, and the district court accepted his waiver. The State specifically requested that Bennett be in the courtroom for required court advisories, including those related to his appellate rights, and the State requested the court also direct Bennett's counsel to reiterate those advisories to Bennett. The district court then informed Bennett that he had 14 days to appeal adverse

4

rulings, *to the extent he had not waived that right*. The court likewise reminded Bennett's counsel to inform Bennett he would have 14 days to exercise whatever appellate rights he had not waived.

A district court must ensure that the defendant understands the consequences of entering a plea. *State v. Moses*, 280 Kan. 939, 948-49, 127 P.3d 330 (2006). The language of a written plea agreement alone cannot satisfy the requirement that the district court *personally* inform the defendant of the consequences of the plea. "[T]he failure to strictly comply with K.S.A. 22-3210 may be reversible error *unless* a review of the entire record demonstrates that the plea was knowingly and voluntarily made and otherwise accepted by the trial judge in compliance with the statute." *State v. Ebaben*, 294 Kan. 807, 816, 281 P.3d 129 (2012). Courts must look at the entire plea process to determine whether the defendant understood the nature and consequences of his or her plea. *State v. Reu-El*, 306 Kan. 460, 473-74, 394 P.3d 884 (2017).

Bennett argues that the totality of the proceedings created an ambiguity as to what appellate rights he retained. In making this argument, he claims that because the State and the district court specifically made efforts to inform him of his "appellate rights," including the 14-day deadline for making a direct appeal, this created ambiguity and confusion as to whether any rights actually existed.

Bennett's arguments do not hold up to cursory inspection. First, as stated above, the district court was required under *Patton* to give those disclaimers. *State v. Patton*, 287 Kan. 200, Syl. ¶ 6, 195 P.3d 753 (2008) (procedural due process requires the court to inform the defendant of their appellate rights). Second, those disclaimers reference appellate rights only *to the extent they had not been waived*. Thus, these disclaimers functioned as a warning and reminder that Bennett had actually signed a waiver.

5

Bennett further argues that the language found in the "Entry of Plea" conflicts with the language in the plea agreement, creating more procedural ambiguity. He relies on two Court of Appeals cases to support his argument: *State v. Bennett*, 51 Kan. App. 2d 356, 347 P.3d 229 (2015), and *State v. Shull*, 52 Kan. App. 2d 981, 381 P.3d 499 (2016).

In *Bennett* the defendant challenged her waiver of her right to have a jury for the departure phase of her sentencing. 51 Kan. App. 2d at 357. The court found that because the defendant was never informed of this specific right, she did not consent to its waiver. 51 Kan. App. 2d at 363. The court also found that certain language throughout the proceedings created a legitimate ambiguity. For example, her plea document stated: "'I may appeal from a sentence that departs from the presumptive sentence.'" 51 Kan. App. 2d at 365. The sentencing judge additionally stated that she had 14 days to appeal her sentence, and that error was never corrected. This is especially relevant, since the departure from a presumptive sentence is precisely what she was trying to appeal. Further, her lack of understanding regarding her appellate waiver was evidenced by her timely attempt to appeal.

In *Shull* the defendant signed a plea agreement waiving his right to appeal his sentence. Both the defendant and the State requested an upward durational departure. Although the defendant received the exact sentence he requested, he claimed it was illegal. He appealed, arguing that the district court did not provide substantial and compelling reasons justifying that durational departure as required by statute. The court relied on *Bennett* to determine that the plea agreement was ambiguous. The facts were similar to *Bennett* in that the court specifically informed the defendant that he had a right to appeal a durational departure and that error was never corrected. Thus, the court's mistake created an ambiguity. 52 Kan. App. 2d at 989.

The facts in the present case are materially different. While some language may be shared between documents in all three cases, the overall context differs. In the present

6

case, Bennett was properly well informed of his rights and what he was waiving. He received the sentence contemplated in the plea agreement. He filed no timely appeal. He is not attempting to appeal based on a right that he was specifically and erroneously informed that he retained. And even if we were to agree with Bennett that the language of the plea agreement itself leaves open the potential for appeal of some issues (such as ineffectiveness of counsel, restitution, and registration requirements), Bennett has not explained why he should be allowed to appeal on any of these grounds two and a half years out of time.

*Bennett has not shown that he could qualify for a late appeal.*

"*State v. Ortiz* . . . may allow a late appeal if a criminal defendant (1) was not informed of his or her right to appeal, (2) was not furnished an attorney to perfect an appeal, or (3) was furnished an attorney who failed to perfect an appeal." *Patton*, 287 Kan. 200, Syl. ¶ 3. Addressing each in turn, Bennett has made no credible claim that he would be entitled to relief.

The first *Ortiz* exception requires a three-part burden-shifting analysis. First, the defendant must demonstrate from the transcripts that the sentencing judge failed to adequately communicate the required information about the right to appeal. If that is shown, the State bears the burden of proving the defendant nevertheless possessed actual knowledge of the required information by some other means. If the State is unable to make this showing, the defendant must then prove that had the defendant been properly informed, a timely appeal would have been pursued. *State v. Smith*, 303 Kan. 673, 678, 366 P.3d 226 (2016).

First, as established by Bennett's own briefs, trial transcripts, and his counsel's testimony, the court informed Bennett more than once about his appellate rights—specifically the lack thereof. This was why the State requested that Bennett be present at

7

sentencing, even though he had waived that right. The court further instructed Bennett's counsel to discuss Bennett's appellate rights with Bennett. The district court found that Bennett knowingly waived his rights, and that his testimony to the contrary was not credible. Those findings are supported by substantial competent evidence. Thus, the first *Ortiz* exception does not apply.

Bennett was provided a team of counsel from the Death Penalty Defense Unit. Thus, the second *Ortiz* exception does not apply.

The third Ortiz exception includes consideration of the effectiveness of counsel, including whether counsel misinformed the client of the existence of appealable issues. *State v. Shelly*, 303 Kan. 1027, 1051, 371 P.3d 820 (2016). In *Albright v. State*, 292 Kan. 193, Syl. ¶ 5, 251 P.3d 52 (2011), we held that K.S.A. 60-1507 movants who have counsel are entitled to effective assistance of that counsel, and if counsel's performance was deficient for failure to file a timely notice of appeal, as a remedy a K.S.A. 60-1507 movant should be allowed to file an out-of-time notice of appeal.

While Bennett argues that he asked counsel to file a timely appeal, counsel directly refutes that claim. The district court found his counsel's testimony to be credible. We find the court's conclusion is supported by substantial competent evidence. Bennett has not provided any credible explanation why it took two and a half years to file his pro se motion.

Taken together, we agree with the district court's summarization that Bennett is simply trying to undo what he knowingly did.

Affirmed.