NOT DESIGNATED FOR PUBLICATION

No. 121,980

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES R. QUINTON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed January 8, 2021. Affirmed.

*Carl F.A. Maughan*, of Maughan Law Group LC, of Wichita, for appellant.

*Thomas R. Stanton*, district attorney, *Keith Schroeder*, former district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., MALONE, J., and WALKER, S.J.

PER CURIAM: Following three convictions in 2003, James R. Quinton was sentenced to imprisonment and ordered to pay restitution and various other fees. After his convictions were affirmed on direct appeal, Quinton filed a K.S.A. 60-1507 motion. The district court denied the motion, and Quinton appealed. A panel of our court found Quinton's trial counsel was ineffective and reversed his convictions, vacated his sentence, and remanded the case for a new trial. Upon remand, Quinton entered into plea negotiations with the State and pled guilty to one count of rape. As part of the plea agreement, the State dismissed two counts of aggravated criminal sodomy. At his resentencing hearing, Quinton was not ordered to pay any restitution. About six months

1

after Quinton was resentenced, he wrote a letter to the district court asking for the court to refund the money he paid as part of his original sentence. After holding a hearing on the letter, the district court found it lacked jurisdiction to grant Quinton's requested refund.

On appeal, Quinton argues for the first time that the government took his private property—his money—in violation of the Fifth Amendment prohibition against governmental taking without just compensation. Quinton acknowledges that he did not raise this argument below but contends the impermissible taking did not occur until the district court denied his requested relief. We hold that Quinton failed to meet an exception to the general rule against raising new arguments for the first time on appeal and therefore affirm the district court's denial of his requested refund.

FACTS

In 2004, a jury convicted Quinton of rape and two counts of aggravated criminal sodomy. Following his conviction, the district court sentenced Quinton to 618 months' imprisonment and ordered him to pay: $152 in court costs, $960.27 in restitution to the Kansas Crime Victims Compensation Board, $4,050 as reimbursement to the Kansas Board of Indigents' Defense Services (BIDS), and a $400 Kansas Bureau of Investigation (KBI) laboratory fee.

Quinton then appealed his convictions, which a panel of this court affirmed. See *State v. Quinton*, No. 93,538, 2007 WL 805999 (Kan. App. 2007) (unpublished opinion). A little over a year after our court affirmed his convictions, Quinton filed a timely K.S.A. 60-1507 motion, alleging ineffective assistance of trial and appellate counsel. The district court denied Quinton's motion after an evidentiary hearing, and he appealed. Upon review, a panel of our court held that Quinton's defense counsel rendered ineffective assistance of counsel by neglecting to request redaction of prejudicial information in a

2

video shown to the jury and by failing to request a limiting instruction as to how jurors could use the video evidence. The panel also found that, when considered with other errors committed by defense counsel, the cumulative effect resulted in reversible error. Consequently Quinton's convictions were reversed and the case was remanded to the district court for a new trial. *Quinton v. State*, No. 112,439, 2015 WL 7693691, at *1 (Kan. App. 2015) (unpublished opinion).

Following remand, on April 27, 2018, Quinton entered into plea negotiations with the State, which ultimately resulted in his plea of guilty to one count of rape. The plea agreement did not address restitution and other fees, but the parties did agree that Quinton "shall waive his right to appeal all matters involved in this case." Based on the plea agreement, the district court granted a downward durational departure and sentenced Quinton to 345 months' imprisonment. The district court also ordered Quinton to pay $193 in court costs and a $400 KBI laboratory fee. The district court did not order Quinton to reimburse BIDS, nor was he ordered to pay restitution to the Crime Victims Compensation Board.

About six months after sentencing, Quinton wrote a letter to Chief Judge Patricia Macke Dick of Reno County District Court seeking the return of the monies he paid toward the original order of restitution, BIDS reimbursement, court costs, and lab fees. In his letter, Quinton stated that he had paid $5,512.27 "toward fines from the case, most going towards BIDS, to pay for counsel." He added: "Last June I agreed to a plea deal [in] which Judge [Trish] Rose ordered me to pay restitution to the sum of ($1360.27). My previous counsel informed me that I should be awarded the original restitution back minus the current restitution for a total returned to me of ($4152)."

The district court treated the letter as a pro se motion for reimbursement of restitution paid, appointed an attorney to represent Quinton on the motion, and held a hearing in March 2019. At the hearing, Quinton argued that restitution was part of a

sentence, and because his sentence was vacated by this court "then that vacates the entire order of sentencing." The State argued that it did not request restitution as part of the plea agreement because Quinton had paid it previously. After finding Quinton had "paid the restitution and court costs" for the original convictions, the district court denied Quinton's motion. The district court found Quinton "cited no authority in support of his request that this court order recipients of restitution and court costs to return the funds received" and held the court lacked jurisdiction to grant his requested relief.

Quinton then filed this appeal.

ANALYSIS

For the first time on appeal, Quinton frames his request for the return of his money as needed to redress a violation of the Fifth Amendment to the United States Constitution. Quinton contends the restitution he paid "was paid under the directive of an invalid, and now vacated, sentence [that] was paid without a valid court order, was not owed, and therefore the refusal to refund the restitution constitutes a taking without due process of law." The State argues Quinton cannot make this argument for the first time on appeal but contends that, even if the panel chooses to reach the issue, the district court properly found it lacked jurisdiction to order a refund.

*Quinton raises this argument for the first time on appeal.*

Generally, alleged constitutional violations may not be raised for the first time on appeal. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). But appellate courts can make exceptions:

> "'Despite the general rule, appellate courts may consider constitutional issues raised for the first time on appeal if the issue falls within one of three recognized exceptions: (1) The newly asserted claim involves only a question of law arising on proved or admitted

4

facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court is right for the wrong reason.'" 301 Kan. at 1043 (quoting *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 [2010]).

If a party wishes to invoke an exception, Kansas Supreme Court Rule 6.02(a)(5) (2020 Kan. S. Ct. R. 34) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. The Kansas Supreme Court has held that this rule is to be strictly enforced and litigants who fail to comply risk a ruling that the issue was improperly briefed, and it will be deemed waived or abandoned. *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014).

In his brief, Quinton acknowledges that he did not raise this argument at the district court, but contends it was not raised because "it did not appear necessary." Quinton added: "[A]s the request for restitution had not yet been denied, it did not appear that the State government had wrongfully taken the defendant's property. It was only once the [S]tate refused to return the property that a taking had occurred." Quinton contends his claim falls under the first exception to the general rule against raising constitutional claims for the first time on appeal because his claim "rests entirely on a question of law arising on proved or admitted facts and is determinative of the case."

The State urges us to find Quinton did not preserve his right to appeal and contends that "[t]he argument can be made that [Quinton] intentionally failed to raise the issue . . . in order to establish a constitutional claim, after he had already agreed to waive his right to appeal any matter involved in the case." The State also submits that Quinton did not object to the restitution ordered in his direct appeal or throughout the habeas proceeding, insisting that "[i]nstead, he simply paid the moneys." The State also argues that Quinton "made no mention" of wanting a refund at his second sentencing hearing and "submits it is reasonable to infer that [Quinton] knew that raising the issue . . . would

not be beneficial to him, because it would simply have been re-ordered by the District Court Judge."

Interestingly, the State does not make a specific argument for Quinton's voluntary waiver of his right to appeal "all matters involved in this case." The State mentions the existence of the waiver but does not suggest the waiver would bar this appeal. This is curious because a knowing and voluntary waiver by the defendant of his statutory right to appeal is generally enforceable. *State v. Patton*, 287 Kan. 200, Syl. ¶ 13, 195 P.3d 753 (2008).

Nonetheless, Kansas courts have found that a defendant's waiver of his or her right to appeal must be unambiguous. *State v. Bennett*, 51 Kan. App. 2d 356, 364-65, 347 P.3d 229 (2015). If a plea agreement incorporating an appeal waiver is ambiguous, it must be strictly construed in favor of the defendant in order to allow an appeal. 51 Kan. App. 2d at 364. Here, the "Defendant's Acknowledgment of Rights and Entry of Plea" addresses Quinton's waiver in two sections. In the first section, the acknowledgment stated: "I understand the plea agreement with the District Attorney to be as follows: . . . Defendant shall waive his right to appeal all matters involved in this case." In the second section, the acknowledgment stated:

> "I understand that despite my plea of guilty or nolo contendere (no contest), I retain a limited right to appeal. I may not directly appeal my conviction, and I understand the appellate courts generally will not entertain an appeal from (a) an agreed-upon sentence approved by the court on the record, (b) a presumptive sentence, or (c) the denial of a departure motion. In any appeal, however, I may challenge my criminal history score and any crime severity level determination that affect my sentence. I may appeal from a sentence that departs form the presumptive sentence. I understand that any appeal must be filed within ten days of the date sentence is imposed and that I must timely tell my attorney about my desire to appeal."

Based on the language of the acknowledgment, a reasonable person could find the plea agreement was ambiguous because the two sections addressing waiver were, in fact, contradictory. The first section waived Quinton's right to appeal *all matters* involved in the case, and the second section stated Quinton retained a *limited* right to appeal. In *Bennett*, a panel of this court found that a similar acknowledgment, plea agreement, and the statements made by the district court were contradictory, leading to an ambiguous plea agreement. The panel noted that separate written plea documents contained statements such as: "'I know I have a limited right to appeal the sentence that is imposed,'" and "'I may appeal from a sentence that departs from the presumptive sentence.'" 51 Kan. App. 2d. at 365. Additionally, the district court told the defendant that he had a right to appeal the sentence. In *State v. Shull*, 52 Kan. App. 2d 981, 988-89, 381 P.3d 499 (2016), another panel found Shull's situation "striking similar" to the situation in *Bennett* and held Shull's plea agreement to be ambiguous as to whether he was waiving his right to appeal his sentence.

Here, the only document in the record speaking to Quinton's waiver is his acknowledgment of his rights, which contains contradictory language. There is no record of the plea agreement itself and no transcript from the plea hearing. Absent these documents, it is difficult to determine whether the waiver was ambiguous.

Regardless of the validity of any purported waiver, we believe Quinton failed to meet the first exception to the general rule against raising constitutional claims on appeal, because resolution of the issue would not be determinative of his case. See *Godfrey*, 301 Kan. at 1043. Even if we were to find in Quinton's favor and order the return of the funds he seeks, then there are a number of facts that would need to be ascertained because the record lacks sufficient facts to make a decision: Did he make voluntary payments? When did he make the payments? Who oversaw distributing the funds once Quinton paid them to the Crime Victims Compensation Board? Where are the funds now? Who would pay him back?

The answers to these questions are not contained in the record because Quinton did not raise the issue before the district court. Quinton proffers that he did not raise this issue below because "it did not appear necessary," but this contention is not persuasive to us. Contrary to Quinton's assertion that he could not raise his Fifth Amendment claims until the district court denied his motion, we believe that an impermissible Fifth Amendment taking, if it did happen, would have occurred *before* the district court denied his request for a refund. If we accept Quinton's argument that restitution was vacated together with his sentence upon remand, the impermissible taking would have occurred when Quinton's sentence was vacated. Thus, the government would have violated Quinton's Fifth Amendment right before he pled guilty, before resentencing, and before the district court held a hearing to address this issue. Based on his own logic, Quinton could have raised this argument to the district court at any time after our court vacated his sentence. And because he failed to raise it below, we lack the facts necessary to make a decision that would be determinative of his case. As a result, we find Quinton failed to meet an exception to the general rule against raising new issues for the first time on appeal.

But even if we found that Quinton's Fifth Amendment arguments fit under one of the exceptions allowing us to review his claims, we are not required to do so. "The decision to review an unpreserved claim under an exception is a prudential one. Even if an exception would support a decision to review a new claim, this court has no obligation to do so." *State v. Gray*, 311 Kan. 164, Syl. ¶ 1, 459 P.3d 165 (2020). Because of the paucity of evidence on Quinton's Fifth Amendment claims, we decline to review them on appeal.

*The district court lacked statutory authority to grant Quinton relief.*

Quinton requests that this court order the Crime Victims Compensation Board, the KBI, and BIDS to refund the funds he paid as part of his original sentence. And, as

8

addressed above, Quinton's argument rests on the general rule that restitution constitutes part of a criminal defendant's sentence. See *State v. Hall*, 298 Kan. 978, 986, 319 P.3d 506 (2014). But to make his argument work, Quinton appears to suggest that "restitution" encompasses all the funds he was originally ordered to pay—including $152 in court costs, a $400 KBI lab fee, and a $4,050 BIDS reimbursement. This is a misguided understanding of his restitution, because the district court ordered Quinton to pay these costs *in addition to* the $960.27 in restitution that Quinton was ordered to pay to the Crime Victims Compensation Board. This distinction is even stronger given the record, which contains a copy of Quinton's restitution order—separate from the sentencing journal entry—which stated Quinton restitution only included the $960.27 to the Crime Victims Compensation Board.

The State does not argue the fees and court costs are separate from the restitution order, but the distinction is important. Kansas courts have consistently held that restitution is part of a criminal defendant's sentence, but the same cannot be said for the various fees and court costs that Quinton wants refunded. Based on the argument submitted by Quinton on appeal, he wants court costs, lab fees, and BIDS reimbursements to also be considered to be part of the court-ordered restitution portion of his sentence. But Quinton has failed to support his position with pertinent authority and has not shown why it was sound despite a lack of supporting authority. As a result, Quinton failed to brief why the court costs and fees should be part of the panel's analysis of his Fifth Amendment argument. See *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019) ("[F]ailure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority . . . is akin to failing to brief the issue.").

Our review of the statutory authority for the imposition of court costs, KBI lab fees, and BIDS reimbursement does not support Quinton's presupposition that these fee assessments are considered part of restitution. See K.S.A. 2019 Supp. 28-172a(d) (authorizing courts to approve fees for "Kansas bureau of investigation forensic or

laboratory analyses"); K.S.A. 2019 Supp. 28-176(a) (authorizing a $400 KBI lab fee, separate from restitution, for "every individual offense"); K.S.A. 22-4513 (authorizing the liability of a convicted defendant for expenditures made by BIDS and methods of payment); K.S.A. 2019 Supp. 28-172b (establishing the indigents' defense services fund and authorizing expenditures); see also *State v. Cummings*, 45 Kan. App. 2d 510, 513, 247 P.3d 220 (2011) (noting "attorneys fees are not restitution, but are part of the court costs" and a court can order reimbursement to BIDS while a convicted defendant is imprisoned—distinguishing from the rule that court cannot require a defendant to pay restitution while imprisoned).

Under K.S.A. 2019 Supp. 21-6604(b)(1), district courts "shall order the defendant to pay restitution [as part of disposition], which shall include, but not be limited to, damage or loss caused by the defendant's crime." Thus, restitution depends on the establishment of a causal link between the defendant's crime and the victim's damages. Restitution may also be allowed for some tangential costs linked to the crime. See *State v. Alcala*, 301 Kan. 832, 837-39, 348 P.3d 570 (2015).

The Legislature established the Crime Victims Compensation Fund under K.S.A. 74-7317(a) as part of the Crime Victims Compensation Board. See K.S.A. 74-7301 et seq. In early 2019, when Quinton wrote the letter requesting a refund, K.S.A. 74-7317(b) and (c) read:

> "(b) Moneys in the crime victims compensation fund shall be used only for the payment of compensation pursuant to K.S.A. 74-7301 et seq., and amendments thereto, and for the state operations of the board. Payments from the fund shall be made upon warrants of the director of accounts and reports issued pursuant to vouchers approved by the chairperson of the board and the attorney general or by a person or persons designated by the chairperson and the attorney general.
>
> "(c) The crime victims compensation board may apply for, receive and accept money for any source, including financial contributions from inmates as provided by

10

subsection (b) of K.S.A. 75-5211, and amendments thereto, for the purposes for which money in the crime victims compensation fund may be expended. Upon receipt of any such money, the chairperson of the board shall remit the entire amount to the state treasurer in accordance with the provision of K.S.A. 75-4215, and amendments thereto. Upon receipt of such remittance, the state treasurer shall deposit the entire amount in the state treasury to the credit of the crime victims compensation fund."

The plain language of K.S.A. 74-7317 provides that the board can accept money from inmates, among other ways, but it can "only" pay out money for the purpose of either compensating victims or board operations. K.S.A. 74-7317(b). And payments issued from the fund "shall be made upon" warrants and reports approved by a designated person. Moreover, subsection (c) specified that any money Quinton paid to the fund as restitution was remitted to the state treasurer, which was then deposited into the state treasury. See K.S.A. 74-7317(c).

Upon further review of the entire Crime Victims Compensation Board statute, no language was identified that would permit the district court, as part of Quinton's criminal case, to refund the money Quinton paid as restitution. Unless Quinton can point to authority suggesting the sentencing court has jurisdiction to refund the $960.27 he paid in restitution, then it would seem there is simply no avenue to grant his requested relief in the criminal case. The court could certainly give Quinton credit against money already paid in any order of restitution on the new case, but no such restitution order was made—presumably because it had already been paid and there was no need to order restitution on the new case. Had the court ordered restitution and then denied a request at sentencing to receive credit toward amounts already paid, this would be a different case.

In its order denying Quinton's motion for reimbursement of restitution, the district court noted that Quinton had cited no authority in support of his request. Without making any further findings, the district court found that it did not have jurisdiction and denied Quinton's motion. In his appellate brief, Quinton once again cites nothing indicating that

the district court did, in fact, have such authority. We believe Quinton's inability to point to any such authority to grant his motion essentially concedes the court's point. See *Salary*, 309 Kan. at 481. We hold that the district court properly found it did not have jurisdiction to grant Quinton relief.

Affirmed.